BAY and others, *administrators* of BAY, and VAN NESS and
others, surviving executors of BACHMAN,
*against*
J. TALLMADGE.

Where *bail* become fixed at law with the payment of the debt of the
defendant, their character of bail ceases.   After judgment and exe-
cution against bail or sureties, there is an end to the relationship of
principal and surety ; and the bail cannot claim any advantage against
the creditor, on the ground of a want of due diligence in prosecuting
the principal debtor.

THE original bill, filed 10th of *June*, 1799, by *John Bay*
and *Abraham Bachman*, stated, that on the 24th of *Sep-
tember*, 1795, the defendant, pretending to have title to
lands in *Pennsylvania*, under the *Connecticut* claim, sold
the same to *Henry Platner*, and took his bond, for the con-
sideration money, being 1100 pounds.   That *Bay* and
*Bachman* became *bail to the arrest*, in *April*, 1796, for
*Henry Platner*, in an action of debt brought by the de-
fendant, *J. T.*, against him, in the Supreme Court, on the
bond of *P.*   That on the 17th of *October*, 1796, *B.* and
*B.* were arrested on the bail bond, and they, afterwards,
procured *Peter Van Loon* to become *bail to the action,* and
the bail piece, with the justification, was filed.   The suit
on the bail bond was prosecuted by the attorney of *T.*,
and a judgment by default entered, and a *fi. fa.* issued,

*April 3d, and
July 9th.*

by virtue of which, the sheriff seized the property of *B.* and *B.* Notice of an application to the S. C. for relief, was given by *B.* and *B.*, but the motion was waived, in consequence of an agreement in writing between the attorneys of the parties in the original suit and the attorney for the plaintiffs, by which it was agreed, " that the judgment should be entered up by consent, in the original suit, against *P.* upon condition that the plaintiff in that suit stay proceedings against the defendants in the bail bond suit, until the event of the measures taken to recover of the defendant *P.* so much of the debt, interest, and costs, as might be recoverable, should be ascertained." That a judgment by default was accordingly entered against *P.* in the original cause, without any new or other bail to the action, and a *fi. fa.* was issued in *April* vacation, 1797, and a levy made by the sheriff on the personal property and real estate of *P.*, consisting of a farm, worth above 1500 pounds, and goods and chattels, to a considerable amount. That *Bachman,* (now deceased,) had a prior judgment against *P.*, which he consented to waive in favour of *T.* the present defendant. That the sheriff advertised the property for sale on a day in *July,* 1797, and on the day appointed for the sale, it was postponed to the 14th of *October* following, without the privity or consent of the plaintiff in the suit, or his agent, but with the consent of *Bay,* one of the bail to the arrest. That on the 14th of *October,* 1797, *T.* did not attend ; and the sheriff, by direction of *Solomon Sutherland, T.'s* agent, postponed the sale for six months. That *Bachman,* and the attorney or agent of *Bay,* were present and urged the sale at the time, and the agent of *Bay* declared, that if the sale did not proceed, *Bay* would not consider that they were bound to secure the debt. That, at that time, the personal property, consisting of hay, grain, stock, cattle, &c., levied on, was worth 700 pounds. That *J. R. Van Rensselaer* was present, and offered to bid to the amount of the debt, interest,

and costs, on a credit of six months, and give satisfactory security for the payment; but *S. Sutherland*, agent of *T.*, refused the offer. That on the 14th of *April*, 1798, the day to which the sale was last postponed, the real estate of *P.* was sold, and bid off by the son and agent of *T.* for 400 dollars; and the personal property on the farm, being a very small part of what was there in *October* preceding, was sold for 400 dollars. That *Bay* attended for the purpose of procuring such a sale of the property as would extinguish the debt, and bid accordingly. That *M. B. T.* the son and agent of *T.*, requested him not to bid, and promised that if he, *Bay*, would desist, and permit him, the son of *T.*, to become the purchaser, *Bay* should be equally interested in the purchase; and *Bay* accordingly desisted. That at the time the sale was postponed, in *October*, 1797, there subsisted a controversy respecting the contents and import of the deed from *T.* to *P.*, and the extent of the covenants it contained: and it was then agreed between *S. S.* as agent of *T.*, and *P.*, that the latter should deliver up the deed, and release the covenant of warranty, in six months, from the 14th of *October*, 1797, and in lieu thereof, accept a deed, for the two townships of land, with a covenant of warranty against the *Connecticut* claim only; and for the performance of this agreement, *S.* and *Charles Vincent* assigned and delivered to *J. R. V. R.* a bond from *H. J. V. R.* to them, on which was due the sum of 400 pounds, for the use of *T.*, if the deed should not be delivered up and the covenant released; and in consideration thereof, *S. Sutherland*, as agent of *T.*, agreed to postpone the sale for *six months*. That the agreement was reduced to writing, and signed by *S. S.* as agent of *T.*, and by *P.* That on the 10th of *April*, 1798, pursuant to the agreement, *P.* delivered up the first deed, with a release of the covenant, and *T.* executed to him a second deed. This deed (which was set forth in *hæc verba*) recited the agreement of the 12th of *October*, 1797, and that the deed was made in pursuance

thereof. The bill further stated, that the son of *T.* sold the land of *P.* purchased by him at the sheriff's sale, without covenants, to *A. Spencer* and *J. C. Hogeboom*, for less than the value, but for more than the amount due to *T.* from *P.* That *T.*, the defendant, received from *A. S.* and *J. C. H.*, a written indemnity against *B.* and *B.*, by which *T.* was to obtain from them the amount of the judgment against *P.*, deducting the bid at the sheriff's sale, and *A. S.* and *J. C. H.* were to keep the defendant, *T.* harmless from any claim of *B.* and *B.* That the defendant had ruled the sheriff to return the execution against *B.* and *B.* before the 12th of *June*, 1799, &c. The bill prayed that the defendant might be enjoined from all further proceedings at law, and for general relief.

*Bachman*, one of the plaintiffs in the original bill, having died, a *bill of revivor* by *Bay*, and the executors of *Bachman*, was filed *July* 3d, 1802 : and *Bay*, *afterwards* dying, another bill of revivor was filed by his administrators, and the surviving executors of *Bachman*, on the 20th of *March*, 1819.

The *answer* to the original bill was filed *July* 5th, 1799 ; but by some arrangement between the counsel of the parties, the original bill and the answer were re-engrossed, and filed as of the 22d of *October*, 1803, in the names of different solicitors. The answer admitted the sale of the *Pennsylvania* lands by the defendant to *P.* &c., the *bond* for the consideration money, and the suit thereon in the S. Court, and alleged that the defendant had a good title to the lands under the *Connecticut Susquehannah Company*. That no notice of special bail was received by the defendant's attorney, until after the service of the writ in the bail bond suit, and there was no offer to pay the costs, and the person offered as special bail was insolvent. That both *B.* and *B.* were arrested in the suit

on the bail bond, and a judgment entered there in, by default, in *January* term, 1787, and execution was issued thereon and levied on the property of both of them. That *Bay* gave notice of a motion to set aside the judgment; but as the proceedings were all regular, and *T.* had lost a trial, the motion could not have been granted, The defendant admitted the agreement of *October*, 1797, as stated in the bill, to which a stipulation was annexed that the plaintiffs should not require an execution to be issued on the suit against *P.* in any other county than *Columbia.* That a *fi. fa.* was issued on the 5th of *June*, 1797, against *P.* to the sheriff of *Columbia*, who levied on a farm of 150 acres and a half, a grist and saw mill, belonging to *P.* which was worth, at least, 1500 pounds, and on personal property, the amount of which the defendant did not know. The defendant admitted the statement as to the postponement of the sale in *October*, 1797, and that his attorney, *A. Spencer*, attended, and *S. Sutherland* attended also, being interested in the avails of the judgment, and the defendant being himself obliged to go a journey. That the son of the defendant purchased the farm at the sheriff's sale, on the 11th of *April*, 1798, for 378 dollars, and the personal property for 74 dollars and 34 cents; but denied that the agent of *Bay* made the declaration stated, or that *J. R. V. R.* made the offer stated. That *C. Vincent* appeared and claimed the land, and the greater part of the personal property, under a deed from *P.* prior to the judgment. The defendant admitted an agreement of the import and effect as charged in the bill, at the time of the last postponement of the sale made by *J. S.*, in his behalf, though without the knowledge or direction of the defendant : he admitted the assignment of the bond to *H. S. V. R.* on the condition stated, but denied that the transaction was the consideration for postponing the sale; but that *S. S.* agreed to the postponement, in consequence of the entreaties of

1821.

BAY
v.
TALLMADGE.

*P.* and his wife, and under assurances that *P.* would, in the mean time, procure the money to satisfy the judgment ; and *T.* acquiesced in the postponement for the same reason, and from a belief that the money would be procured. The defendant admitted the surrender of the old deed, and the giving of a new deed, as stated in the bill ; and that the sheriff had been served with a rule to return the execution against the plaintiffs. That after the sale of *P.'s* estate, he directed his attorney to proceed against the bail, *B.* and *B.* That they did not pretend that they were not liable, but urged the defendant to proceed against the estate of *P.* in other counties ; and the defendant's attorney accordingly issued executions to other counties ; and it being ascertained that no property of *P.* could be found, the defendant again directed his attorney to proceed against *B.* and *B.*, who had since, repeatedly, applied to the defendant for indulgence, and did not pretend that they were liable. The defendant averred, that *Bay* was secured, and would not be damnified by paying the balance due to the defendant. That no injury had arisen to the plaintiffs from the postponement of the sale from *October*, 1797, to *April*, 1798, as the property of *P.* sold for more, by that arrangement. That *Bay* had received money under securities given to *B.* and *B.* by *P.* for their indemnity as bail. The defendant denied any conveyance of the farm of *P.* by him or *M. B. T.* to *S.* and *H.* ; but he admitted that *M. B. T.* with the consent of the defendant, in *January*, 1799, sold the farm to *J. C. H.* for 1500 dollars.

Many witnesses were examined by both parties ; and the material parts of the evidence are stated in the opinion delivered by the Court.

The cause was brought to a hearing, *April* 2d, 1821.

*Henry*, for the plaintiffs. He stated the following points :
1. That the defendant having given time to *Platner*, on the

execution against him, without the assent of *B.* and *B.,* his
bail, they were discharged. (2 *Caines' Cases in Error,* 1.
40. 42. 49, 50. 58. 7. *Johns. Rep.* 332. 10 *Johns. Rep.*
180. 587. 595. 13 *Johns. Rep.* 283. 17 *Johns. Rep.* 384.
2 *Johns. Ch. Rep.* 554. 559. *Holt's N. P. Rep.* 84. 3
*Wheat. Rep.* 148. note *a.*)

2. That the bail were more strongly entitled to be dischar-
ged, as the time was given to the principal, contrary to their
express prohibition, and to their injury.

3. That the defendant ought to restore to the plaintiffs
what he had exacted from the bail, with interest.

4. That the defendant should be decreed to pay the costs.

*Van Vechten* and *Tallmadge,* contra, contended, 1. That
*B.* and *B.,* having become fixed at law, as bail, ceased to
stand in the relation of sureties. (1 *Tidd's Pr.* 158. 1
*Sellon,* 192.)

2. That the defendant having elected to proceed on the
bail bond, waived his right to proceed against the principal,
and *B.* and *B.* became the debtors. (6 *Johns. Rep.* 97.)
The bail stand in the place of their principal, and can be
relieved on no other terms than the payment of the debt,
interest, and costs. (2 *Vern.* 608, 609. *Ambl.* 446.
11 *Vesey,* 22.)

3. That *B.* and *B.* being fixed as bail for the debt, could no
longer be regarded as sureties; and after consenting to the
adjournment of the sale, in *July,* 1797, could not come into
this Court to compel the defendant to proceed against the
original debtor.

4. The defendant has done no act whatever, that could
absolve *B.* and *B.* from their liability. And they had, by
repeated acts, since 1797, acknowledged their liabili-
ty. The doctrine to be found in some late decisions, as to
sureties, was not applicable. (3 *Wheat.* 524. 3 *Binney,*

520. 15 *Johns. Rep.* 433. 16 *Johns. Rep.* 154. 17 *Johns. Rep.* 404.

*July 9th.* The cause stood over for consideration until this day.

THE CHANCELLOR. *Bay* and *Bachman*, whom the present plaintiffs represent, were bail to the arrest in a suit at law, commenced by the present defendant against *Henry Platner*. Special bail not being put in, the bail bond was assigned, and the bail to the arrest were sued and prosecuted regularly to judgment and execution. A *fi. fa.* for the amount of the debt, interest, and costs due from *P.*, the original defendant, was issued and levied upon their property. An agreement, in writing, was then entered into, bearing date the 28th of *April*, 1797, between the present defendant, by his attorney to the suit, and the agent or attorney of *B.* and *B.* the bail, by which judgment was to be entered by consent against *P.*, the original defendant, and proceedings stayed against *B.* and *B.* in the bail bond suit, until the effect of measures taken to recover of *P.* so much of the debt, interest, and costs as might be recoverable by execution, within the county of *Columbia*, should be ascertained.

Under that agreement, a *fi. fa.* was, on the 5th of *June*, 1797, issued and levied upon personal property, and a farm belonging to *P.* The property was advertised for sale by the sheriff, in *July*, 1797, and on the day appointed for the sale it was postponed to the 14th of *October*, 1797, against the consent of the agent of the present defendant, but with the consent of the agent of *Bay*, one of the bail to the arrest. On the 14th of *October*, the present defendant did not attend, but *S. Sutherland*, who was interested in the judgment, attended at the place of sale on his behalf, and as his agent, agreed to a further postponement of the sale, to the 14th of *April*, 1798. The defendant says, in his answer, that *S. S.* was not authorized to attend as his agent, or agree to any postponement of the sale, but he, the defendant, afterwards,

acquiesced in the postponement, for the reasons that induced S. S. to assent to it, and which were the intreaties of *P.* and his wife, and the assurances of *P.* that he could, in the interval, procure money to pay the debt.

The whole of the present controversy arises upon this postponement of the sale.

The counsel for the plaintiffs contend, that by giving further time to *Platner* on the execution, without the assent of *B.* and *B.*, they were discharged ; and especially as such postponement was against their express prohibition, and to their injury. On the other side, it is contended, that *B.* and *B.* having their property charged in execution, had become principal debtors, and had lost, as respected the present defendant, the character and privileges of bail, and that the defendant did not discharge them by the postponement of the sale ; and that *B.* and *B.* afterwards repeatedly waived any such pretence, and recognized their existing responsibility.

The fact of the postponement is admitted, but the objection to it, on the part of the bail, is denied.

One of the witnesses for the plaintiffs (*J. R. Van Rensselaer*) says, that *Bachman*, one of the bail, and the agent of the other, were present, and that such agent objected to the postponement, and informed either *S. S.*, or the attorney of the defendant, that his principal, *Bay*, would not hold himself further bound for payment of the judgment, if the sale was postponed. Another witness for the plaintiffs (*David Ingersol*) deposes much to the same effect, and that the agent of *Bay* objected to the postponement of the sale, and observed, that if they did not proceed, the two bail would consider themselves discharged, and that either *S. S.* or the attorney of the defendant, replied, that there was property enough, and that they would not look to the bail.

It is to be observed, that *S. Sutherland* is dead, but the answer denies any knowledge or belief of any such objection made on the part of the bail, to a postponement of the sale.

and the attorney of the defendant (*A. Spencer*, now Ch.
J.) who was present at the postponement, and was the
person most likely to be consulted, as to every measure re-
specting the execution, and very likely to take accurate no-
tice of every transaction, never heard any such objection, or
understood that any such objection was made. He says, the
sale was postponed at the earnest request of *Platner* and his
wife, to enable him to raise the money. It is also improba-
ble, that S. *Sutherland* should have undertaken, without
any consultation with the attorney of the defendant, to re-
ply in the manner he is said to have done, that the defend-
ant would not look to B. and B. *Ingersol*, also, says, that
the sheriff declared, that if the sale was postponed, it must
be at the risk of the defendant, and that either S. S. or the
attorney of the defendant replied, that they would take the
responsibility on themselves. The attorney says, he never
heard of any such observation from the sheriff, and never
understood that either the sheriff or any of his deputies were
opposed to the adjournment. Such a reply from either the
attorney or S. S. would be very improbable.

The communications on the part of B. and B., and on
the part of the sheriff, would naturally have been made to
the attorney to the execution, rather than to S. S., a stran-
ger, who came there from necessity, because the defend-
ant himself was absent on a journey, and who had no
instructions from the defendant. I think it, therefore, very
possible, there may have been some loose conversation, mis-
understood by the witnesses, and that any serious and direct
objection to the postponement would have been addressed to
the attorney himself. The two witnesses who mention the
fact of the objection, do not either of them recollect, with any
certainty, so material a point as the identity of the person
to whom the objection was made. They do not know whe-
ther it was made to *Sutherland*, the assumed agent, or to
the attorney for the defendant. This fact considerably im-

pairs the force and precision of their testimony ; and though I have no doubt they both speak to the best of their memory, yet considering the circumstances attending the case, and the very remote period of time to which their testimony refers, I cannot say that I think the fact of a direct or explicit dissent from the postponement of the sale, is made out to my entire satisfaction.

2. But assuming the fact of a dissent from the postponement, as charged on the part of the plaintiffs, the postponement did not discharge *B.* and *B.* from their obligation to pay the judgment against them. Their privileges as bail were lost, and they had become fixed as principal debtors ; and what they were entitled to require of the defendant, rested upon their contract with him of the 28th of *April,* 1797, not upon their character as bail. They were entitled to require the fulfilment of it, upon the footing of a contract with good faith; and that necessarily implied reasonable diligence in the efforts to collect the money of *Platner.* It required nothing more ; and I am not aware of any case that has ever imposed upon the creditor the necessity of peculiar diligence against the principal, on the ground of the still subsisting relation of principal and surety, *after judgment and execution* against the bail or the surety. It becomes, then, too late to inquire into the antecedent relations between the parties. Those relations became merged in the judgment. This was expressly declared to be the case as between the holder and maker, and endorser of a promissory note, by the Supreme Court of the *United States,* in *Lenox* v. *Prout ;* (3 *Wheat.* 520;) and I cannot perceive that the plaintiffs *B.* and *B.* have any greater privileges after judgment against them, in consequence of their original character as bail, than the party had in the case cited, who was originally an endorser without consideration. In that case, there was judgment against *P.* as endorser, and another judgment against *D.* as maker of a promissory note ; and *P.* called on the

*After judgment against bail, their character of bail is at an end; and they can no longer claim the privileges of sureties.*

creditor, and requested him to issue execution against the maker. He did so; but recalled the execution before any thing was done, though *P.* had offered to point out to the sheriff, property of *D.*, and to indemnify him for taking and selling it. It was shown to be probable, that if the *fi. fa.* had been prosecuted to effect, a great part of the judgment might have been recovered of *D.*, the maker. The Circuit Court had, upon these circumstances, perpetually injoined the holder from proceeding at law on the judgment against *P.*, but that decree was reversed by the unanimous opinion of the Supreme Court, on the ground, that by the judgment, the endorser, as well as the maker had become a principal debtor, and he ought to have paid the money at once, and taken under his own direction the judgment against the maker, by having it assigned to him.

The meaning of the agreement of the 28th of *April*, 1797, was, that the defendant was to take measures to recover the debt of *P.* under the evidence of a reasonable discretion. He was not bound to press an immediate sale of his property with unusual severity. He did proceed with due diligence; and the first adjournment of three months was against his consent, and at the instance of *B.* and *B.* The second adjournment was called for by the intreaties of the debtor, and under assurances and expectations that the money could be procured in the intermediate time. If the plaintiffs *B.* and *B.* were dissatisfied with the second adjournment, they should have come forward and offered payment, and called for an assignment of the judgment, for their indemnity. This they would have been entitled to demand, and if it had then been refused, the refusal might have laid the foundation of a claim for the assistance of a Court of Equity. But when it appears that the creditor acted in good faith and from humane motives towards the debtor, and with a view to facilitate the payment of the debt, it would not be consonant to the principles of this Court, to

lend the exertion of its powers to punish a party with the loss of his debt, for a reasonable forbearance to the debtor. It would be giving too severe and rigorous a construction to the agreement of *April*, 1797.

I have not considered as of any importance, in this case, the circumstance charged in the bill, that the postponement was in consideration, and. as part of an agreement on the part of *Platner*, to deliver up his deed from the defendant, and to accept of a new one with less extensive covenants. The allegation did not appear to be sufficiently supported, and the counsel who argued the cause, on the part of the plaintiffs, did not rely upon it, as I apprehended, for he put the cause, by his points, not upon the ground of any new agreement with *P.*, but simply on the ground that the defendant had "given time" on the execution, without the assent, and even against the prohibition of *B.* and *B.*

The bill charged that the agreement alluded to was reduced to writing, and signed by *S. S.* as agent of the defendant and by *Platner ;* and in another part of the bill the new deed is set forth *verbatim ;* it contains a recital of the agreement, but the postponement of the sale forms no part of it, and the charge, therefore, is refuted in the bill itself..

The answer expressly denies that the postponement was in consideration of that agreement, and avers it to have been made by reason of the entreaties of *P.* and his wife, and under assurances that he could, in the mean time, raise the money to pay off the debt.

So stands the fact upon the pleadings, and the parol proof is equally contradictory.

*J. R. V. R.* says that the postponement was in consideration, and as part and parcel of the agreement to surrender the original deed, and to receive a new one ; and he says that the agreement was made between *A. S.* and *S. S.* (the attorney, and the agent of defendant,) and himself, as the

agent of *Platner.* But the attorney for the defendant (*A. S.*) says that the postponement was for the very reasons stated in the answer, and he neither knows nor believes that getting up the original deed was the consideration of the postponement, and that he neither assented to, nor dissented from, the adjournment.

It is very certain, then, that that charge in the bill is not sufficiently supported, and must be abandoned.

3. The subsequent acts of *B.* and *B.* were a complete waiver of any claim in equity founded on the postponement of the sale, and a full and absolute recognition of their responsibility.

The sale was in *April,* 1798, and it is proved, that on the 4th *July,* 1798, both the plaintiffs, *B.* and *B.* applied to the attorney of the defendant, to have an execution issued against the property of *P.* in *New-York* and *Onondaga.* They declared that they desired it, for the purpose of exonerating themselves, as far as possible; and the attorney, at their instance, issued executions accordingly, though it was an act entirely gratuitous, and not within the agreement. So, again, at the instance and request of the same persons, on the 5th of *October,* 1798, he issued another *fi. fa.* to the sheriff of *Columbia,* for the purpose of levying on two negroes and some timber, on the allegation made by them, that the same was the property of *P.* . The personal property was sold, and some of it purchased by one of the plaintiffs, *Bay.* All these recognitions were before the filing of the bill; and the attorney to the defendant says, that *B.* and *B.* did not; on those occasions, or any other, pretend, that they were not liable for the unsatisfied balance due on the debt of *P.* The attorney for the defendant states further, that since the sale of the negroes and timber, he has been frequently applied to by *B.* and *B.* to delay the collection of the balance of the debt, without making any suggestion, that they were not liable; and he states further, that on the 8th of *January,* 1800, he received a bond from the plaintiff *Bay,* and others, for the balance re-

maining unpaid and due to the defendant; that the bond was taken as a full settlement of the judgment against B. and B., and it was afterwards paid.

After such repeated acts of acknowlegement of responsibility, the original plaintiffs B. and B. either never intended to hold themselves discharged from the payment of the judgment against them in consequence of the postponement of the sale, or they afterwards retracted that determination. If any right accrued to them, in equity, by reason of the postponement, to be relieved, they have voluntarily waived that right by their subsequent admissions of their obligation to pay. They have required the defendant to issue executions into other counties for their benefit, and it has been done. They have called for another execution into the county of *Columbia*, and it has been issued, and property sold under it; and, finally, they have paid the judgment, and discharged it. They have no more equity to have that payment refunded, than a person who had voluntarily paid a debt barred by the statute of limitations. The equity of the suit has failed, and the several bills that have been filed in the cause must all be dismissed. But considering the great length of time in which the parties have mutually slept upon their claims, (for it is twenty-two years since the first answer of the defendant was put in,) and considering the representative character in which the plaintiffs have assumed the prosecution of the cause, and the contradiction and uncertainty, attending some of the material matters of fact in litigation, I shall dismiss the bill without costs.

Decree accordingly.