Lane, C. J.
It is first necessary to determine the character of Edmund Clarke. He came into the debt as surety, has signed the cognovit without designating his position, and suffered judgment to be taken without any certificate of the fact. Whether a surety can claim his privileges after judgment is a point which has given rise to conflicting opinions, and, in recent cases, the doctrine is doubted or denied. 16 Eng. Com. Law, 273; Bay’s Adm’r v. Tallmadge, 5 Johns. Ch. 305; Lennox et al. v. Prout, 3 Wheat. 520. But I am instructed *by my brethren to announce it as the opinion of a majority of the court that they entertain no doubt of Clarke’s right to assert this privilege in this case. They direct me to place this opinion, not only on the basis that judgment was taken on process which did not necessarily afford an opportunity of obtaining the statute certificate, from the uncertainty of the time and place where it was to be enterod; or, on the higher foundation, that a former decision of this court, Dixon and Hawk v. Ewing’s Adm’rs, 3 Ohio, 280, has furnished a rule, ever since acted upon, and too late to change. Assuming, then, the continuing existence of E. Clarke’s suretyship, it gives *383 him the privilege of requiring from the creditor a faithful effort to obtain satisfaction from the principal debtor.
The relations between the surety and the purchasers from the principal debtor, depend on other considerations. The surety’s privilege is an equity, attaching to and following the debt, and under certain forms and conditions (1 Story’s Eq. 477), he may claim in chancery the benefit of every security, or aid, or moans of payment, which the law, or the providence of the debtor, or the vigilance of the creditor, has provided for its payment. 4 Johns. 130.
Among those the most obvious is, to drive the creditor to exhaust the judgment lien. His equity attaches to this, and he may thus appropriate all its advantages to his protection. The lien, in this case, upon all the lands which the debtors jointly or separately then held, commenced in April, 1837. It was suspended, but not destroyed, by the writ of error. It might have been defeated by a junior judgment, or a subsequent levy, but it remains paramount to the title of a purchaser, while the judgment continues in force. Norton v. Beaver, 5 Ohio, 178; 10 Ohio, 75. The application of these principles enable Edmund Clarke to screen his own property from the judgment, by throwing its burden on the purchasers.
But both surety and purchaser may justly demand from the judgment creditor the pursuit of the debtor’s unincumbered property. If the creditor unnecessarily, and without cause, forego the means of satisfaction from him, he will not be permitted *to claim it afterward from them. 8 Ohio, 148, pt. 2; 10 Ohio, 76. This, leads us to inquire if the Western Reserve Bank has lost its right to recur to the property of the surety, or to the lands sold by the debtors, after the discharge of the first levy.
In November, 1838, the execution of this creditor was levied upon two lots, No. 51, in Ohio City, and No. 95, in Cleveland. The Ohio City lot is described, in the levy, as lot No. 51, 250 feet front on the river, and 200 feet deep. It lies on the-west side of the river, but its beginning corner is to be found by the establishment of a very doubtful and unsettled line on the east side of the river. From this uncertainty, and from the peculiar bends of the river, the lot admits being surveyed, with about the same apparent justice, in five or six different forms; but in any of these forms, a part of a lot, having the described front, never belonged *384 to the judgment debtors; and water, ten or twelve feet deep, covers a considerable portion of the remainder. There is a slender chance that property so situated can be properly appraised, or brought to a fair or speedy sale, unless the boundaries and title are first established by the chancellor.
Lot No. 95 consists of a lot and block of buildings in Cleveland, and was appraised at $22,000. It was incumbered by a previous mortgage for $4,000. An execution may lawfully be levied on mortgage lands, but the sale is attended with great disadvantages and risks. There being no authority, at law, to take an account of the sum due, the land must be appiaised, without regard to the mortgage, and the whole avails of the sale applied on the execution, leaving the whole burden of the mortgage to be borne by the purchaser, in addition to the price, unless he can obtain satisfaction for the mortgage from other sources. Baird v. Kirtland et al., 8 Ohio, 22; Bank of Canton v. Commercial Bank, 10 Ohio, 71.
The law imposes no duty on the judgment creditor, to encounter the expense or delay of a suit in chancery, to ascertain incumbrances, or define boundaries, of his debtor’s lands. His rights are plain, at law, to have satisfaction of his judgment, *from anything bound by its lion. They whose interests are subordinate to his, by paying the debt, may substitute themselves for him, and take upon themselves the administration of his remedies, 1 Johns. 409, 430; 4 Ib. 130; but they are not permitted to interfere with his pursuit, unless they can point out property of the debtor, upon which the burden will fall more equitably, and which will yield the means of adequate satisfaction, without embarrassment, expense, or delay. “'La caution qui requiert la discution (du debiteur principal) doit indiquer au creancior, les biens du debiteur principal, et avancer les deniers suffisans pour faire la discution.”
“Elle ne doit indiquer ni les biens du debiteur principal sitúes hors do l’arondissement de la Cour Eoyale, du lieu, ou le payment doit etro fait, ni des biens litigieux, ni ceux hypothéqués a la dette qui ne sont plus en la possession du debiteur.” Code Civil Nap. 2023.
The circumstances of this case, therefore, afford the creditor sufficient ground for abandoning the levy upon the two lots first seized, and for extending their new execution upon any property *385 liable to the judgment lien; and. the seventeen lots, notwithstanding the sales of a part, are fairly within his reach. The relations-among all the defendants seem to us to create no exception to the general rule, that the property of the debtor shall be sold before that of the surety, and that, among the purchasers, the lots must be exposed for sale, in the inverse order of the dates of the purchases.
The exception attempted to be set up, under the law of partnership, does not extend to this case. That arises where a fund is to be distributed, or a burden to be shared, among those whose equities are entirely equal; and the partnership obligations, in such case, fail upon partnership property; and separate obligations upon separate property, not only because the presumption arises, that partnership obligations were incurred to increase partnership property, while the separate liabilities enhanced the property of the individual, but chiefly from the peculiar relations between the partners themselves. Grosvenor v. Austin, 6 Ohio, 113. *Where joint debtors sell lands subject to the judgment lien, they confer an equity upon the purchaser to exempt what he purchases from the burden, until all the other lands, subject to the lien, whether held jointly or severally, shall be exhausted. Subsequent purchasers acquire the same equity, but subordinate to that of elder purchasers, because posterior in time. The distinction, therefore, between joint and separate property, is of no moment in the present case, since the same lien and the same equities extend to both, and leave unimpaired the right of the earlier purchaser to impose the burden upon him whose interests are acquired later than his.
The decree may be taken, declaring the rights of the parties, and providing for a sale, in the first place, of the lands belonging-to the principal debtors, in the inverse order of the dates of the purchases from them. Decree accordingly.