A. YEARY ET AL. v. W. D. SMITH.

1. ERROR BOND.—See error bond held sufficient.
2. PRACTICE—SPECIAL ISSUES.—That a cause was submitted to the jury upon special issues, and not upon a general charge, is not a cause for reversal, even where it appears that the defendant in error below asked that the cause be submitted upon a general charge.
3. PRINCIPAL AND SURETY.—Where a creditor, by a valid and binding agreement with the principal debtor, without assent of the

surety, materially varies the terms of the contract, or extends the time for its performance, the surety is thereby discharged.

4. PRACTICE—SPECIAL ISSUES.—See special issues held complex and obscure, and not calculated to suggest to the jury the points upon which the case should turn.

5. VERDICT.—See verdict held contradictory and insufficient to support a judgment.

6. CONSIDERATION FOR STAY OF JUDGMENT.—A payment of part of a judgment which was credited thereon is not a sufficient consideration for holding up execution as to the remainder.

ERROR from Gonzales. Tried below before the Hon. Henry Maney.

A motion was made to dismiss the writ for want of a sufficient error bond, there being but one surety, and because the bond was not conditioned as required by law. The bond was conditioned "that plaintiffs in error shall prosecute said suit with effect, and comply with the judgment, order, or decree of the Supreme Court upon said writ of error, and well and truly pay all such sums of money as may be awarded against them."

This was a suit by W. D. Smith to enjoin an execution and judgment in the District Court of Gonzales county in favor of plaintiffs in error.

In the petition it is alleged that Yeary and wife recovered a judgment against John W. Watson for the sum of $1,703.62, with 12 per cent. interest from date, on the 15th of October, 1859, which was affirmed by the Supreme Court on the 7th of November, 1860, against said Watson and his sureties on the error bond, A. P. Towns and M. G. Dikes. That afterward, on the 10th of January, 1861, execution was issued and levied on four negroes, when petitioner and W. L. Foster, as sureties, executed with Watson a replevin bond for the forthcoming of the negroes, which bond was returned forfeited on the 2d of April, 1861; that on the 30th of April, 1861, another execution was issued, which, on the 6th of September, 1861, was levied upon out lot No. 4, in range 1, and two hundred and forty-five acres of land on Denton's creek, which was

advertised to be sold on the 1st of October, 1861; the execution was returned, with credits amounting to $1,350, and the return on the execution was that it was returned for want of time to make the balance of the money; that the judgment was the property of William Ferguson and A. P. Ferguson, who were the wards of Yeary and wife, and that the wards became of full age on or before July, 1861; that said Yeary and wife turned over to said wards full control of all their estate; that William Ferguson had sold and transferred his interest in said judgment to T. M. Harwood, defendant herein; that on the 21st of August, 1861, Watson, the principal in the judgment, paid A. P. Ferguson $75, and also on same day paid him the further sum of $275 on said judgment; and in consideration of this payment the said A. P. Ferguson contracted and agreed with said Watson by a written agreement to hold up execution on the judgment from 21st of August, 1861, to the 1st day of January, 1862. And that in consideration of the said amount he did extend the time of payment of said judgment from the 21st day of August, 1861, to 1st of January, 1862, by a valid and binding agreement in writing, all of which was done without the knowledge or consent of petitioner; that by reason of the said agreement the sheriff was restrained and prevented from making the money on the execution, and that the petitioner being only surety on said judgment by reason of the said holding up and extension of time, the said petitioner was released, and is not now bound to pay the same.

That during the time the judgment was held up, the principal debtor and all the other defendants were solvent, and the judgment could be made out of them; that since that time they have all become insolvent; that no further proceedings were taken on said judgment until August 24, 1868, when execution was issued, and which is sought to be made out of petitioner, he being the only solvent one of the defendants; that the levy on the town lot and land remains undisposed of, and has been released by the acts of

plaintiff without the consent of petitioner, and if they had been sold at the time would have made the amount of the levy; that the principal debtor paid on the said judgment various specified amounts, amounting to $1,694.55; that Harwood's half of said judgment had been fully paid off; that the execution issued was for more than was due on the judgment, after deducting the credits; and prayer is made for injunction, &c.

The answer expressly denied that the execution was ever held up, and that any time was given to the principal debtor, and that the time of payment of said judgment was extended by any binding agreement in writing to hold up said execution on said judgment or by any other sort of agreement, and that said judgment or execution was held up at all by any binding agreement with said A. P. Ferguson or any one else, and that the sheriff was restrained from making the money; but upon the contrary, they allege that the sheriff did proceed to make a levy on said execution long after the date of the said pretended order to the sheriff to hold up execution. It is also alleged that if even the said Watson did pay to A. P. Ferguson the sums alleged as a consideration to hold the execution, the full amount was credited on the judgment, and that the contract to hold up was without consideration and void; that said Ferguson was a minor, and without control of the judgment, and unable in law to make any disposition of the said judgment; and that the return of the sheriff on the execution shows that the execution was not in fact held up; that an *alias* execution was issued on the 15th of October, 1861, and put in the sheriff's hands, and that he did not execute it or make the money, because the country was then in revolution, and the war then just beginning absorbed everything, and that on the 1st of January, 1862, the execution was "returned by operation of law."

On the trial, Smith, the plaintiff, read in evidence—

1. The original judgment in the case of Yeary and Wife *v.* Watson *et al.*

2. The entries on the execution docket in said case, as follows:

"I, Wm. A. Ferguson, being the ward of the above-named plaintiff, in whose favor the above-named judgment was rendered as guardian of myself and Austin P. Ferguson, and I, having now arrived at full age, and being the owner of one equal undivided half of the above judgment, for value received, do hereby assign and transfer all of my interest in said judgment to T. M. Harwood, this April 9, 1860.

Witness: W. A. FERGUSON.

LEO. WILLIS.

"January 10, 1861.—Issued execution to sheriff Gonzales county, including sureties on bond.

"April 2, 1861.—Returned not satisfied; levy, advertisement, and forfeiture sheriff, three dollars; sureties on replevin bond, Wm. D. Smith and Wm. L. Foster.

"May 7, 1861.—Issued *alias* to sheriff Gonzales county.

"October 4, 1861.—Returned not satisfied, with credits of $1,290.25, and costs paid.

"August 21, 1861.—$350 paid to Ferguson, and $940.25 paid to Harwood on 30th October, 1861.

"October 15, 1861.—Issued *pluries* execution to sheriff Gonzales county against defendants and sureties.

"January 1, 1862.—Returned not satisfied by operation of law.

"Received on the above judgment, from J. W. Watson, the sum of two hundred and seventy-five dollars, for which I gave my receipt, dated about 10th July, 1862.

T. M. HARWOOD.

"Received of J. W. Watson the sum of $126.05, for T. M. Harwood, December 2, 1862. F.

"August 24, 1868.—Issued execution to sheriff Gonzales Co. *v.* M. G. Dikes and W. D. Smith."

3. The replevin bond, as described in the petition, with the indorsement thereon "*forfeited.*"

4. The execution issued upon the forfeiture of said bond, issued April 30, 1861, indorsed as follows:

"Issued April 30, 1861.   Come to hand May —th, 1861. Credit this execution with $350, by order of Austin P. Ferguson.   Dated August 21, 1861.   Received $50 costs, August 23, 1861, for which Watson holds my receipt.

BASS, <em>Sheriff.</em>

"Paid Grundy clerk's fees.                               A. T. B.

"Received clerk's costs in this case.

J. H. GRUNDY, <em>Clerk.</em>"

"Levy this execution upon that portion out-lot No. 4, range 1, conveyed to W. F. Laird by the administrator of Elizabeth Brown, deceased; also, the interest of W. F. Laird in a tract of 245 acres of land, more or less, conveyed to Laura and I. Cohn, by N. Trammell and wife, situated on the headwaters of Denton's creek, all pointed out by W. F. Laird.

"Advertised to sell October 1, 1861.

A. T. BASS, <em>Sheriff G. C.</em>

"September 6, 1861.

"The amount to be collected on this execution for

Harwood is    -    -    -    -    -    -    $1,319 90

940 25

Balance due Harwood    -    -    -    -    -    $379 65

"Received on this execution by the hands of Eli Mitchell, $950, October 3, 1861.          A. T. BASS, <em>Sheriff G. C.</em>

"Received my commissions on $950.00, and levy and advertising, $9.75, by W. A. Nations, deputy.

"Received, October 3, 1861, of Wm. A. Nations, deputy sheriff, $940.25, being the amount above received by him, less his commissions.                        T. M. HARWOOD.

"There has been paid on this execution $1,350, as per above receipt, and this execution is returned not satisfied in full, for want of time to make the balance.   October 4, 1861.

A. T. BASS, <em>Sheriff G. C.</em><br>By W. A. NATIONS, <em>Deputy.</em>"

Plaintiff then called J. W. Watson, defendant in execution, who testified that A. P. Ferguson was a ward of Yeary and wife, and owned one half interest in the judgment; that he became of age in August, 1861, and his guardian had authorized witness to deal with him about his share of the judgment. Witness proved the following orders, which were read in evidence:

"Mr. A. T. Bass, sheriff of Gonzales county: You are hereby instructed to hold up a certain execution in your hands in my favor, and against J. W. Watson, William Smith, and William Foster, until the first day of January, 1862, and credit said execution with the sum of two hundred and seventy-five dollars. August 21, 1861. Respectfully,

AUSTIN P. FERGUSON.

"ATTEST:

"W. H. H. WADE,

"A. J. L. LOWELL."

"Received, July 10, 1862, of John W. Watson the sum of two hundred and seventy-five dollars, being in part payment of my half of the judgment in the District Court Gonzales county, styled James A. Yeary and wife against J. W. Watson, on a note which was given for certain negroes belonging to the heirs of Ferguson.                T. M. HARWOOD."

"Mr. A. T. Bass, sheriff of Gonzales county: You are hereby requested to enter a credit of seventy-five dollars on an execution in your hands in my favor, and against J. W. Watson, William Smith, and William Foster, and oblige, yours, respectfully,                AUSTIN P. FERGUSON.

"August 21, 1861.

"ATTEST:

"WM. H. H. WADE,

"ASA J. L. LOWELL."

Witness then stated that the $275 order was not in fact for money, but for a pair of match horses witness let A. P. Ferguson have when he was going to the army in 1861, and that in consideration of said match horses A. P. Ferguson

agreed to credit the execution with the sum of $275, and to hold up the execution until January 1, 1862; that Harwood owned half the judgment by purchase of the interest of the other ward, who was younger than A. P. Ferguson; that in the fall of 1861 witness and all his sureties were solvent, and had plenty to pay all debts, but now all were insolvent and discharged bankrupts, except the plaintiff, W. D. Smith.

On cross-examination, Watson testified "that the $75 and $275 (making $350) was duly credited on the execution, but that the $275 was for a pair of horses he let Ferguson have when going off in the Sibley expedition in the fall of 1861." Witness had brought said orders to Gonzales, and had delivered them to A. T. Bass, sheriff of Gonzales county.

Plaintiff offered to prove by Watson that the execution had been held up by Watson, and for what consideration it had been so held up. This was excluded, on objections by defendants that the execution and return therein were conclusive and could not be varied by parol testimony.

Plaintiff then read the execution sought to be enjoined:

J. F. Miller, for plaintiff, and his counsel, testified that when he had been spoken to by plaintiff to inquire into the execution that had been issued against him, on examination, he found in the office of the clerk of the District Court of Gonzales county the two orders dated August 21, 1861, one for $75 and the other for $275, carefully folded up in the execution issued October, 1861, and returned January 1, 1862.

Defendants then read the execution issued October, 1861, and returned January 1, 1862, with the indorsements thereon, (see above,) and called Leo Willis, who testified that "he was the clerk of the District Court of Gonzales county during 1861 and 1862; that it was his custom to issue all executions immediately after the adjournment of the court; that the District Court met about the first week in October, 1861, and remained in session about a week; but little business was done, the country being in revolution and everybody going to the army; that all executions issued by him, amounting to

about two hundred in all, were returned by the sheriff January 1, 1862, with indorsements similar to the one in this case: 'January 1, 1862. Returned, not satisfied, by operation of law.' That the sheriff did not attempt to make money on executions at that time; that the war absorbed everything."

The court submitted special issues, which, with the response of the jury to each, are as follows:

1st. "At the date of the order of A. P. Ferguson to the sheriff, was the said A. P. Ferguson the owner of the whole judgment or part of the judgment in favor of J. A. Yeary and wife against J. W. Watson and others; and if you say he was owner of a part of said judgment, then how much of it did he own?"

To which the jury answered, "A. P. Ferguson owned one half."

2d. "Was the execution upon the judgment referred to held up, to the extent of the interest of said A. P. Ferguson, by the written agreement of A. P. Ferguson with J. W. Watson, entered into and made by Ferguson for a valuable consideration, outside of and beyond the indebtedness of said Watson, by reason of said judgment, without the consent of William D. Smith, the plaintiff in this suit?"

Answered in the affirmative.

3d. "Did said J. W. Watson pay to said A. P. Ferguson, as a consideration for the execution on said judgment being held up, any other or further amounts of money than that which was credited to Watson on the judgment referred to?"

Answered in the affirmative.

4th. "Was execution upon the judgment referred to held up for the full amount of said judgment; and if so, at whose instance was said execution so held up, and was it without the consent of William D. Smith, the plaintiff in this suit?"

To which the jury answered, "The execution was not held up for the full amount; and was at the instance of A. P. Ferguson, and without the consent of W. D. Smith."

"We, the jurors in the case of William D. Smith v. J. A. Yeary et al., decide in favor of the defendant."

Upon this verdict, a decree was rendered in favor of Smith for costs, against the defendants for costs, and releasing him from liability upon the execution and judgment enjoined and upon the replevin bond signed by him.

Yeary and his co-defendants filed a motion for a new trial, which was overruled, and they prosecuted their writ of error.

*T. M. Harwood*, for plaintiff in error, cited Raines v. Calloway, 27 Tex., 685; Lindsay v. Price, 33 Tex., 282; 2 Johns., 448; 12 Johns., 426; Payne v. Powell, 14 Tex., 600; Hunter v. Clark, 28 Tex., 159; Frois v. Mayfield, 33 Tex., 807; Roquemore v. Alloway, 33 Tex., 461; Suydam v. Vance, 2 McLean, 99; Lowe v. Underhill, 3 McLean, 376; Varnum v. Bellamy, 4 McLean, 87; King v. Thompson, 3 Cr., (C. C.,) 146; 12 Wheat., 505.

*Miller & Sayers*, for defendant in error, cited Burge on Suretyship, p. 206; Parker v. Nations, 33 Tex., 210; Pilgrim v. Dykes, 24 Tex., 384; Wybrants v. Lutch, 24 Tex., 310; Burke v. Cruger & Moore, 8 Tex., 66; Cole v. Robertson, 6 Tex., 356; Jones v. Hays, 27 Tex., 2; Testard v. Neilson, 20 Tex., 139; Snead's Ex'r v. White, 3 J. J. Marsh, 527; Beauford's Adm'r v. Dargan, 9 Dana, 22; Mayhon v. Crockett, 2 Swanson, 193; Nelson v. Williams, 2 Dev. & Bat., 118; Reese v. Burington, 2 L. Cas. in Eq., 2d part.

WALKER, JUSTICE.—The motion to dismiss this case for want of a sufficient bond is overruled—the court regarding the bond as in substantial compliance with the statute. (Paschal's Dig., art. 1517.)

The rulings of the court below were mainly in compliance with the views entertained by the counsel for the plaintiff in error.

The evidence of Watson offered to prove that by an agree-

ment between himself and A. P. Ferguson the execution in
the hands of the sheriff Bass was held up from the 21st day
of August, 1861, until the 1st day of January, 1862, and was
improperly excluded from the jury on the motion of counsel
for plaintiff in error.

Again, it is insisted here that the judgment below should
be reversed, for the reason that the cause was not submitted
under a general charge from the court, but that special issues
were given to the jury.

The record shows that counsel for defendant in error, on
the trial below, asked that the cause might be submitted
under a general charge.

Again, it is contended that the judgment is not in accord-
ance with the findings of the jury. We are of opinion the
findings do authorize the judgment, and that the evidence
was sufficient to support them.

The judgment of the District Court is therefore affirmed.

AFFIRMED.

Opinion delivered December 23, 1873.

*A. M. Jackson*, for plaintiff in error, on motion for rehear-
ing.—The leading features of the case are these: The suit
was brought by the appellee Smith, to enjoin a judgment
recovered by the appellants. But it is essential to note
the relation or the connection in which the plaintiff Smith
stands to the judgment and the parties whom he seeks to en-
join. He never was a party to the suit between the present
appellants as plaintiffs and John W. Watson as defendant.
At the time that judgment was rendered in the District Court,
and at the subsequent term, in 1860, when it was affirmed by
this court, the present plaintiff, Smith, was a total stranger
to it. But after that judgment was affirmed by this court
against Watson and his sureties in error, Towns and Dikes,
execution was issued against them and levied on two slaves.
This was in January, 1861. Watson gave a delivery bond

to obtain a release of the slaves, and the present plaintiff, Smith, became one of his sureties on that bond. And this was and is the only connection Smith ever had with this matter prior to his institution of this suit for injunction. That delivery bond became forfeited on the 2d day of April, 1861, and the legal effect of the forfeiture was to make execution issue against the principal and sureties for the amount of the debt and costs. (Paschal's Dig., art. 3779.)

Now, to ascertain the true attitude of the present plaintiff, Smith, the essential thing to be considered is the condition of the delivery bond and its legal effect. That condition was the delivery of the property levied on to the sheriff of the county by or on the 2d of April, 1861, and on a failure to comply with this condition, the law fixed the liability of all the obligors for the debt and interest, and authorized execution to enforce that liability. The sole consideration of the bond and of the legal liability resulting from its forfeiture was the release of the property levied on. But for the execution of the bond, the property would have remained in the hands of the sheriff, and its proceeds would have been paid to the present appellants. By the execution of the bond, therefore, the appellee became a surety for Watson, but his surety relation was with reference and relation to Watson alone. As to the present appellant, he was not a surety of Watson, but an original and principal obligor. The bond was not an individual contract of Watson, guaranteed by Smith as a surety. It was a joint and several obligation of them both, conditioned for the delivery of the property, and on the failure of the condition, the statute fixed the resultant liability on them both, and on them both as principal obligors, so far as these appellants are concerned.

The delivery bond was a substitute for the property which had been by its means released from the appellants' levy; a substitute, too, not taken by the consent of the appellants, but wholly independent of their consent, by the officer of the law. Upon the forfeiture of the bond, therefore, I submit

that all the makers of it stood exactly alike in their relation
to the appellants, no matter which was the principal or which
the surety as between each other.

Judicial precedents having an immediate bearing upon
this position, I admit to be scarce, but in the recent Reports
of the Supreme Court of the United States, I find this iden-
tical doctrine very explicitly laid down, and I submit that
one adjudication of that tribunal is of itself a host.

The case I rely on is Inbusch *v.* Farwell, 1 Black, 566.
The suit was on a bond given to release goods from the levy
of an attachment, exactly analogous to our delivery bond on
levy of an execution. The plaintiff in error, Inbusch, was a
surety on the bond, complaining of the judgment rendered
against him and his co-obligors by the court below. In de-
monstrating the correctness of the judgment, Judge Clifford,
who delivered the opinion of the court, says, (on page 572:)
"Attachments are made for the benefit of creditors, but the
provisions for the discharge of the property attached is made
for the benefit of debtors. They may demand as matter of
right, upon complying with the requirements of law in that
behalf, to have their property discharged from attachment,
and that a bond with sureties be accepted in its place. Under
those circumstances, it is quite obvious that the bond becomes
a substitute for the property released; and where there are
no circumstances to render the case an exceptional one, it
must be held that any judgment that would have bound the
property, if it had remained under attachment in the hands
of the marshal, will bind the obligors of the bond," &c.

The relevancy of this doctrine and language to the case
now at bar is self-evident. If correct, it is obvious that the
obligors in such a bond are all principals, so far as the plain-
tiff in attachment or execution is concerned; and that the
forfeiture of the bond fixes their absolute liability as princi-
pal obligors to the plaintiff; and from this it unavoidably
follows, that if, after the forfeiture, the plaintiff gives time
to one of the obligors, either for a consideration or as a mere

indulgence, it is not an extension to a principal debtor at the expense or risk of a surety. There is no surety or question of suretyship in such a case. All the obligors are joint judgment or execution debtors, and there is no such principle of law as that an extension of time, even upon a consideration, given to one of several joint defendants in execution will release the others. True, there might be circumstances in a case like this which would change the result: for instance, if the plaintiff excused or prevented the delivery of the property at the time it should have been forthcoming. But as nothing of that kind is pretended in this case, I pass on.

The doctrine relied upon by the appellee is unquestionable law, but it can have no application in this case. In King v. Baldwin, Chancellor Kent stated it thus: "The doctrine is, that the surety is bound by the terms of his contract; and if the creditor, by agreement with the principal debtor, without the concurrence of the surety, varies these terms by enlarging the time of performance, the surety is discharged, for he is injured and his risk is increased." (2 Johns. Ch., 559, 560.) Now, the only terms of this appellee's contract are the stipulations of the delivery bond, and it is not even pretended that the appellants, or any one, ever attempted to vary those terms in any manner whatever. Hence it is clear that this case is wholly unaffected by the doctrine.

Again, in corroboration of my position, I cite Bay v. Tallmadge, 5 Johns. Ch., 315, where Chancellor Kent says: "I am not aware of any case that has ever imposed upon the creditor the necessity of peculiar diligence against the principal, on the ground of the still subsisting relation of principal and surety, after judgment and execution against the bail or surety. It becomes, then, too late to inquire into the antecedent relations between the parties. Those relations become merged in the judgment;" and he cites 3 Wheat., 520, to the same effect.

I shall not insist that a forfeited delivery bond is in every

respect a judgment, although in Smith *v.* Basinger, 12 Tex., 227, this court expressly treated it as a judgment and affirmed it as a judgment. For, in the later case of Testard *v.* Neilson, 20 Tex., 140, it was expressly held not to be such a judgment as a writ of error would lie to; and this decision has probably settled the matter. But I submit that for all present purposes a forfeited delivery bond has all the attributes of a judgment, and merges the antecedent relations between the makers of it. It should be recollected that such a bond is taken by an officer of the law and under the express authority of the statute, and that the plaintiff in execution is not consulted about accepting it, and has no discretion or option to reject it. Execution issues at once upon the forfeiture of such a bond against all the makers. Taking the conditions of such a bond in connection with the provisions of the statute, (Paschal's Dig., art. 3779,) and the forfeiture is equivalent to a confession of judgment by all the obligors for the amount of the execution.

Again, with respect to a creditor: how can the relation of a surety be created? Is not such a relation necessarily the result of a contract, to which the creditor is a necessary party? Could it possibly be created without the consent of the creditor? If not, then it is obvious that as regards the appellants the appellee is not and never has been a surety. The legal and equitable principle underlying all the decisions which have held sureties to be released by the creditor granting time to the principal debtor is, the alteration by the creditor of the surety's contract with him. But there never has been any contract between the present appellee and the appellants. How, then, can that doctrine have any relevancy to this case?

Desiring to conceal nothing, I mention that the case of Pilgrim *v.* Dykes, 24 Tex., 384, seems inconsistent with the positions I have taken. But it does not appear that those positions were called to the attention of the court, and the opinion takes no notice of the essential distinctions which must necessarily exist between a suretyship created by con-

tract of the parties, and the *quasi* suretyship common to statutory bonds, over which a creditor has no control or option.

MOORE, ASSOCIATE JUSTICE.—It has become long since settled law, that where a creditor, by a valid and binding agreement with the principal debtor, without assent of the surety, materially varies the terms of the contract, or extends the time for its performance, the surety is thereby discharged. The form and character of the contract is immaterial. And though it is a specialty, and all the obligors appear on its face to be principals, parol evidence is admissible in equity to show the relation which the obligors bore to each other, and that the debtor was cognizant of it. (Burge on Suretyship, 202; Burke *v.* Cruger, 8 Tex., 66; Wybrants *v.* Lutch, 24 Tex., 309.) That the surety's liability has its origin by a writ-of-error bond, which has passed into judgment before the extension of time by the creditor, is not an exception to the rule, has been directly decided by this court. (Pilgrim *v.* Dykes, 24 Tex., 383.) If so, certainly the same must be said as to sureties on a replevin bond, after a forfeiture.

But an examination of the record leads us to the conclusion that the issues submitted to the jury by the court were not presented in a manner calculated to elicit either a satisfactory or intelligible verdict. Most of the issues were complex and obscure, and, in the form in which they were drawn, not calculated to suggest to the minds of the jury the precise and specific issues upon which the case should turn. Though persons possessed of legal experience and knowledge may be able to eliminate from them the substance of the matter in controversy, it is by no means certain that the non-professional mind would do so. The verdict tends strongly to induce the impression that this must have been the fact with the jury who tried the case in the District Court. The verdict unquestionably is flatly contradictory. The first part of it, as the court held, authorized a judgment for the plaintiff, while it concludes with a plain and direct general finding in

favor of the defendant. The judgment can only be sustained by discarding altogether this part of the verdict, on the ground that it is not responsive to any issue submitted to the jury by the court.

Nor does the verdict, if free from contradiction, after discarding from it this general finding for the defendant, warrant the judgment which was rendered upon it. The effect of the responses to the three first issues is, that A. P. Ferguson owned one half of the judgment, and that he, in consideration of an amount paid him, over and above the amount to which he was entitled on the judgment, stayed its collection without the knowledge or consent of the plaintiff; while in response to the fourth issue the jury find that the execution was not held up for the full amount of the judgment. If this was the fact, plaintiff had no right to complain as to so much of the judgment as was not held up. And as it does not appear from the special findings of the jury, to which we can only look to support the judgment, that this part had been paid, or, indeed, that all of it had been paid but Ferguson's half, the judgment perpetuating the injunction as to the whole amount is not warranted. In view of these considerations, we think the court should have set the verdict aside and granted a new trial.

While we have not felt inclined to place the reversal upon the ground that a sufficient consideration was not shown to support the agreement to stay the execution, it is proper for us to say, that the evidence as exhibited by the statement of facts is indefinite, and not altogether satisfactory. It cannot be said that it clearly appears that Watson paid Ferguson anything more than he was credited on the execution. An agreement to give time in consideration of the mere payment of a part of the debt is a *nudum pactum*, and does not discharge the surety. (8 Tex., 71.) The proof shows that the principal debtor sold Ferguson a pair of mules, for which he credited the execution by two hundred and seventy-five dollars, and, as it is claimed, agreed also to stay the

collection of the balance of the judgment until the subsequent January. Now, if the mules, as estimated by the parties, exceeded in value the amount for which credit was given, the agreement giving time was valid and binding. On the contrary, if two hundred and seventy-five dollars was the amount at which the mules were valued by the debtor, it would be otherwise.

REVERSED AND REMANDED.