**RELIABLE IRON WORKS et al. v. FIRST STATE BANK & TRUST CO.**
(No. 9822.)

(Court of Civil Appeals of Texas. Fort Worth. April 8, 1922.)

**1. Sequestration ⚌20—Sureties on replevin bond are not liable if writ of sequestration is quashed.**

Where property is taken under writ of sequestration, and replevied by defendant, the sureties on the replevin bond are not liable if the writ of sequestration is quashed upon motion.

**2. Sequestration ⚌20—Sureties on replevin bond cannot, after judgment, attack proceedings before judgment.**

Where no motion attacking the proceedings for sequestration was made before judgment was rendered against the defendant and the sureties upon his replevin bond, the sureties cannot, after such judgment, take advantage of defects in the proceedings had before judgment, although the sureties are in a sense parties to the suit, in view of Rev. St. arts. 7104, 7106, and 7107.

**3. Pleading ⚌433(6)—Omission of allegation of incorporation does not invalidate judgment.**

The failure of a petition to show whether a party to the suit was a Texas corporation, duly incorporated, as required by Rev. St. art. 1822, though it makes the petition subject to attack by special exception, does not make it so defective as to nullify the proceedings after judgment, but the defect is waived if the objection is not raised before judgment.

**4. Parties ⚌94(1)—Court cannot say Reliable Iron Works is not name of individual.**

In proceedings against the sureties on a replevin bond, where the names of two of the sureties were Reliable Iron Works and G. A. Works, the court cannot say for a certainty that Reliable Iron Works is not the proper name of an individual, so as to render the pleadings defective for failure to allege whether it is the name of a corporation or partnership.

**5. Appeal and error ⚌884—Party held not entitled to complain of name used in pleadings.**

A surety who signed a replevin bond, and sued out a writ of error in the name by which it was designated in the pleadings, cannot complain of the use of such name.

**6. Sequestration ⚌20—Judgment must state value of each article, so as to relieve defendant and surety of part by returning part of property.**

Where four automobiles were seized under a writ of sequestration, and were replevied by defendant, a judgment for recovery of the property by plaintiff must separately state the value of each automobile in view of Rev. St. arts. 7095, 7097, 7106, 7107, under which the defendant and the surety may relieve themselves of part of the judgment by the return of one or more of the automobiles though unable to return all.

**7. Principal and surety ⚌104(1) — Binding agreement for extension of time without surety's consent discharges surety.**

A binding agreement by the principal and a creditor giving the former an extension of time for the performance of his obligation, without the assent of the surety, discharges the surety.

**8. Principal and surety ⚌108(1)—Stay of execution against principal in consent judgment is binding without consideration, and discharges surety.**

A provision in a consent judgment against the defendant and the sureties on his replevin bond staying execution of judgment is binding without consideration, so that the sureties need not prove consideration to establish their discharge by such stay as would be necessary if the stay were granted by ordinary agreement of the parties.

**9. Statutes ⚌64(7)—Invalidity of a provision in sequestration statute held not to invalidate same.**

Even if Rev. St. arts. 7107, 7108, providing for redelivery of damaged property replevied after sequestration, is invalid because conferring on the sheriff or constable the judicial power to determine the amount of damages that provision does not affect the validity of the statutes as a whole.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by the First State Bank & Trust Company against B. C. Armstrong, to foreclose a mortgage upon automobiles which were replevied by defendant after seizure under a writ of sequestration. Judgment for the plaintiff against the defendant, and against the Reliable Iron Works and others as sureties on the replevin bond, and the sureties appeal. Reversed and remanded.

Bonner, Bonner & Sanford, of Wichita Falls, for appellants.

Moyers & Creighton, of Mineral Wells, and Thompson, Barwise, Wharton & Hiner, of Fort Worth, for appellee.

CONNER, C. J. The appellee, the First State Bank & Trust Company, describing itself as "a banking corporation having its principal place of business in Palo Pinto county, Tex.," instituted this suit on September 22, 1920, against the appellee B. C. Armstrong, upon a promissory note for the sum of $5,005, dated June 25, 1920, made by B. C. Armstrong, payable to W. E. Davidson, and alleged to have been duly assigned by the latter to the Bank & Trust Company. The plaintiff further sought to foreclose a certain mortgage described in the petition that had been executed by Armstrong to secure the payment of said note upon five automobiles, one of which was alleged to be in Wilbarger county, Tex., and the other four in Wichita county, Tex. At the same time

plaintiff sued out writs of sequestration directed to the proper officers of Wilbarger and Wichita counties, respectively, commanding the seizure of the automobiles.

As a ground for the issuance of the writs the plaintiff alleged in his verified petition:

"That he fears that the said B. C. Armstrong, defendant, will injure and ill treat said five automobiles, hereinbefore described during the pendency of this suit."

The writs were issued and severally levied and returned by the proper officers showing that the defendant B. C. Armstrong, together with E. P. Hicks and Fred R. Jacobs, as sureties, had replevied the automobile levied upon in Wilbarger county. The return of the sheriff of Wichita county showed that the defendant B. C. Armstrong, together with the Reliable Iron Works, G. A. Works, and F. R. E. Fleming, as sureties, had replevied the four automobiles levied upon and sequestered by the Wichita officer, the sequestration bonds referred to being severally returned to the district court of Palo Pinto county, together with the executed writs.

The following description of the automobiles is given in the several instruments referred to, to wit, in the plaintiff's petition seeking to foreclose its alleged mortgage and to secure the issuance of the writs of sequestration, in the affidavit to secure the writs, in the writs of sequestration, and in the replevy bonds, viz.:

"One Jones roadster automobile, motor No. 37120, serial No. 6305, of the value of $2,000; one Jones roadster automobile, motor No. 39701, serial No. 6313, of the value of $2,000; one Jones oil field special automobile, motor No. 39016, serial No. 6261, of the value of $1,-000; one Willys-Knight Eight seven-passenger automobile, motor No. ——, serial No. ——, located in Burkburnett, Texas, June 25, 1920, of the value of $500; one Dodge tool pusher five-passenger automobile, motor No. ——, serial No. ——, located on June 25, 1920, in Burkburnett, Texas, of the value of $500."

The replevy bond returned by the sheriff of Wilbarger county thus described the automobile levied upon by him, to wit: "One Jones oil field special automobile, motor No. 39016, serial No. 6261, of the value of one thousand ($1,000) dollars"—the bond being conditioned that the said "B. C. Armstrong will not remove said property out of the county of ——, state of Texas and that he will have said property, with the value of the fruits, hire or revenue thereof forthcoming to abide the decision of the courts, or will pay the value thereof, and of the fruits, hire or revenue of the same in case he shall be condemned to do so."

The replevy bond returned by the sheriff of Wichita county thus describes the property levied upon by that officer, to wit:

"One Jones roadster automobile, motor No. 37120, serial No. 6305, of the value of two

thousand ($2,000) dollars; one Jones roadster automobile, motor No. 39701; one Willys-Knight seven-passenger automobile, motor No. ——, serial No. ——, located in Burkburnett, Texas, on June 25, 1920, of the value of five hundred ($500) dollars; one Dodge tool pusher five-passenger automobile, motor No. ——, serial No. ——, located on June 25, 1920, in Burkburnett, Texas, of the value of five hundred ($500) dollars."

The bond was conditioned as in the case of the replevy bond from Wilbarger county.

The record further shows that on the 27th day of November, 1920, the defendant appeared, and a judgment by agreement of the parties was entered in favor of the bank for the sum of $5,737.70, principal, interest, and attorney's fees, together with a foreclosure of the mortgage lien · declared upon by the plaintiff. The judgment further recites the issuance and levy of the several sequestration writs and the execution and return of the several replevy bonds mentioned, and that the court found that the "reasonable market value of the Jones Oil Field Special automobile, motor No. 39016, serial No. 6261," was $1,500, and that the "reasonable market value of the other four automobiles hereinabove described is $5,000." The court accordingly further adjudged that the plaintiff recover from E. J. Hicks and Fred R. Jones the sum of $1,500, and of Reliable Iron Works, G. A. Works, and F. R. E. Fleming the sum of $5,000, and reciting that the value of the fruits, hire, and revenue of the Jones oil field special automobile, motor No. 39016, serial No. 6261, was, all told, $200, and that the value of the fruits, hire, and revenue of "each of the other four automobiles" was the sum of $500 all told.

The term of court at which said judgment was rendered adjourned on the 4th day of December, 1920, and the several sureties upon the several replevy bonds hereinabove mentioned, against which judgment was so rendered, have sued out this writ of error.

[1] A number of interesting questions have been presented by the assignments of error. We do not find it necessary to discuss them all at length. It seems manifest that defects exist in the sequestration proceedings, and, upon proper motion therefor, the court would doubtless have quashed such proceedings. For instance, in addition to the insufficiency of the description given of some of the property, the affidavit for the writs was grounded on the allegation:

"He feared that B. C. Armstrong, defendant, will injure and ill treat said five automobiles hereinabove described during the pendency of this suit"

—while the replevy bonds are conditioned that the defendant "B. C. Armstrong will not remove said property out of the county," the statutes in such cases require .the condition of replevy bonds to be "according to ·the

241 S.W.—38

plaintiff's affidavit." See V. S. Tex. Civ. Statutes, art. 7104. And this court decided upon full discussion, in the case of the Commercial Acceptance Trust v. Earl Parmer, 241 S. W. 586, in an opinion by Mr. Associate Justice Buck, handed down on February 4, 1922, and not yet [officially] published, that the sureties on a replevy bond where the writ of sequestration had been quashed upon motion were not bound, and that judgment against them was erroneous.

[2] But in the case before us there was no motion to quash and no decree of the trial court that they were defective, so that we are not inclined to extend the rule as announced in the case of Mitchell Co. v. Bloom, 91 Tex. 634, 45 S. W. 558, and in our own decision last referred to, to the extent of ruling that the sureties on the replevy bond may appear after judgment against them, particularly on appeal, and take advantage of defects in the proceedings preceding judgment.

The terms of the obligation which is the foundation of the liability of the sureties on a replevy bond are that he will have the property sequestered with the value of its fruits, hire, or revenue forthcoming "to abide the decision of the court, or that he will pay the value thereof and of the fruits, hire or revenue of the same in case he shall be condemned so to do." Revised Statutes, art. 7104. And it is further specially provided (R. S. art. 7106) that, in case the suit is decided against the defendant, "final judgment shall be entered against all the obligors in such bond, jointly and severally, for the value of the property replevied, and the value of the fruits, hire, revenue or rent thereof, as the case may be." From such judgment (article 7107) to the extent of the value of the property replevied the sureties on the replevy bond may be relieved by a mere redelivery of the property to the sheriff for the benefit of the plaintiff in the judgment.

It is true sureties upon a replevy bond are parties to the suit in the sense that judgment may be rendered against them should the judgment of the court be against the defendant, but we cannot think the law contemplates that the sureties be so favored as to permit them to compel the plaintiff to litigate questions that the defendant in the suit may waive, and in the present suit, in fact, by his silence and agreement did waive, unless, indeed, the proceedings were absolutely void, or that such silence or waivers on the part of the defendant was fraudulent, and with the purpose of thereby irregularly imposing a judgment upon the sureties, and in this case there are no allegations of fraud or collusion between the plaintiff and the defendant, and nothing on the face of the record so indicates. We therefore hold that plaintiffs in error cannot be relieved of the judgment against them because of the de-

fects in the sequestration proceedings which preceded the execution of their several replevy bonds.

[3] Plaintiffs in error urge the invalidity of the judgment against them on the ground that the plaintiffs' petition fails to allege that it was a Texas corporation "duly incorporated," and fails to show whether the Reliable Iron Works is a corporation or a partnership, the insistence being that our Texas statute, article 1822, prescribes that, in pleading the charter or act of incorporation, it is necessary to allege that such corporation was "duly incorporated," etc. While it has been held that the petition of a plaintiff corporation which fails to allege that it was "duly incorporated" is subject to special exception (see Way et al. v. Bank of Sumner [Tex. Civ. App.] 30 S. W. 497, and, to the same effect, Bank v. Simonton, 2 Tex. 531, and Holloway v. Ry. Co., 23 Tex. 465, 76 Am. Dec. 68), we know of no case and none has been cited, which goes to the extent of holding that, in the absence of exception or demurrer, an allegation, as in this case, that a plaintiff is a corporation is so defective as to nullify all subsequent proceedings. At least we held otherwise in the case of Bury v. Mitchell Co. (Tex. Civ. App.) 74 S. W. 341. As it seems to us the question merely goes to the capacity of the plaintiff to sue, which is in the nature of a plea in abatement that must precede all pleas in bar, and, unless taken advantage of by exception, the defect is waived. In this case the record fails to show that a demurrer was urged against the petition either because of the failure of the plaintiffs' petition to allege that the plaintiff was duly incorporated, or because of a failure to allege whether Reliable Iron Works was a corporation or a partnership, and what we said in disposing of the first objection applies in part at least, to the last.

[4, 5] Moreover, we are not certain that it can be said with certainty that the Reliable Iron Works is not the proper name of an individual—a person sui generis. Reliable Iron Works is signed to the replevy bond in immediate connection with G. A. Works, whose capacity to sue or to be sued is not questioned. It is thus manifest that "Works" is a surname. While unusual, it is not impossible for a member of that family to have been given the Christian or baptismal name of "Reliable Iron." At all events, that plaintiff in error is in no position to complain, having in effect represented itself as a person with capacity to contract and to sue by signing the replevy bond and suing out the writ of error in the designated name now objected to.

[6] Regardless, however, of the effect of our conclusions upon the subjects already discussed, plaintiffs in error present two other questions of greater controlling import. By reference to or quotation from

the judgment, it will be seen that the reasonable market value of the four automobiles sequestered in Wichita county was given as $5,000, the separate value not being given. It is insisted that the judgment is fatally defective in this respect and we think this contention must be sustained as to the plaintiffs in error Reliable Iron Works, G. A. Works, and F. R. E. Fleming, the sureties on the replevy bond given for the four automobiles sequestered by the Wichita officer.

Article 7095, V. S. Tex. Civ. Statutes, provides that no sequestration shall issue in any case until the party applying therefor shall file an affidavit in writing stating that he is the owner of the property sued for, describing it "with such certainty that it may be identified and distinguished from property of a like kind, giving the value of each article of the property and the county in which the same is situated."

Article 7097 declares that no writ of sequestration shall issue in any case until the party applying therefor has filed with the judge, clerk, or justice of the peace to whom he applies a bond payable to the defendant for a sum of money not less than double the value of the property to be sequestered, as stated in his affidavit, etc.

Article 7106 declares that, if judgment be against the defendant, final judgment shall be entered against all the obligors in such bond, jointly and severally, for the value of the property replevied and the value of fruits, hire, revenue, or rent thereof, as the case may be.

The next article (7107) provides that the defendant shall have the right, at any time within 10 days after the rendition of the judgment provided for in the preceding article, to deliver to the sheriff or constable of the court in which such judgment is rendered, the property, or any portion thereof, which he has bound himself to have forthcoming to abide the decision of the court.

It seems evident from these articles of the statutes that the law contemplates that a defendant, to the extent of the value thereof, may relieve himself and his sureties on his replevy bond of any part of the whole that has been sequestered by returning the same to the sheriff of the county in which the judgment has been rendered. In other words, under the statutes the plaintiffs in error named would have the right to be relieved to the extent of the value of any one or more of the automobiles replevied, even though unable to return the whole number. See Cook v. Halsell, 65 Tex. 1; Harden v. Swob Clothing Co. (Tex. Civ. App.) 37 S. W. 784; Lewter v. Lindley (Tex. Civ. App.) 81 S. W. 776; Bateman v. Hipp, 51 Tex. Civ. App. 405, 111 S. W. 971; Ratliff v. Gordon (Tex. Civ. App.) 149 S. W. 196; Herrera v. Marquez (Tex. Civ. App.) 182 S. W. 1143. We therefore conclude that the judgment as

against the plaintiffs in error, the Reliable Iron Works, G. A. Works, and R. F. E. Fleming, is fatally defective, in that it fails to specify the separate value of the four automobiles replevied.

What is perhaps a more serious objection to the proceedings below than any that have yet been mentioned is presented by the contention of the plaintiffs in error that they are entirely discharged from liability because of the fact that the judgment grants a stay of execution for 60 days. The judgment in that respect reads:

"It is ordered that stay of execution issue herein for 60 days and that thereafter the plaintiffs herein have execution for the satisfaction of said debt as hereinabove set forth against said principal debtor and said bondsmen and for costs herein."

As before stated, the judgment was rendered on the 27th day of November, 1920, and the transcript shows that that term of court adjourned on the 4th day of December, 1920.

Article 3714, Rev. Statutes, reads:

"From and after the adjournment of every district or county court, it shall be the duty of the clerk thereof to tax the costs in every case in which a final judgment has been rendered against the party liable therefor under such judgment, and which have not been paid by him, and to issue execution for the enforcement of such judgment."

And article 3734 provides that:

"When an execution against the property of any person is issued to an officer, he shall proceed without delay to levy the same upon the property of the defendant not exempt from execution, unless otherwise directed by the plaintiff, his agent or attorney."

[7] It is thus evident that by the terms of the decree in this case the plaintiff was deprived of the power of an immediate enforcement of his judgment which, had the same been done with the dispatch contemplated by the law, might have enabled the plaintiff to collect his debt, interest, and costs from the principal defendant without resort to the property of the sureties upon the defendants' replevy bond. It is too well settled to require quotations from the authorities that a binding agreement by the principal and a creditor, giving the former an extension of time for the payment of the performance of his obligation discharges the surety. 2 Williston on Contracts, § 1222; 32 Cyc. p. 204, § 3; 21 R. C. L. p. 1020, par. 73. And this principle has been recognized as applying to a judgment. See Yeary v. Smith, 45 Tex. 56; Bothfeld v. Gordon, 190 Mass. 567, 77 N. E. 639, 5 L. R. A. (N. S.) 764, 112 Am. St. Rep. 341.

The third headnote to Yeary v. Smith, supra, will convey, we think, the proper conception of the established doctrine, to wit:

"Where a creditor, by valid and binding agreement with the principal debtor, without assent of the surety, materially varies the terms of the contract, or extends the time for its performance, the surety is thereby discharged."

[8] The decisions cited were not cases where, as here, the stay of execution was provided for in the judgment in behalf of the creditor, but cases where the agreement to stay the execution arose after the rendition of the judgment. Hence in those cases the necessity of proof of a consideration for the agreement to extend was held to be necessary; a consideration in such cases being necessary in order to make the agreement binding and deprive the creditor of the power to legally enforce collection of his judgment before the expiration of the time limit of his agreement. But here the reason for requiring proof of a consideration fails, in that by the very terms of the decree no execution is authorized until after the expiration of the 60 days from the adjournment of the term of court, and the creditor therefore is without legal power to enforce his judgment at an earlier date. We think, therefore, that the judgment is binding on the appellee irrespective of an absence of affirmative proof of a consideration for the agreement to extend the time for the issuance of execution, and effectively operates to discharge all of plaintiffs in error upon proof that they did not consent to the decree.

But we feel some hesitancy, however, in assuming that the agreement to stay the execution was without the assent of the sureties on the replevy bond, inasmuch as there is no statement of facts before us, and the recitation of the judgment is that it was rendered "by agreement of the parties" without specific exclusion of the plaintiffs in error, and nothing else in the record affirmatively and specifically shows a want of the consent of any one or more of the plaintiffs in error. We accordingly think a safer procedure will be to reverse the judgment and remand the cause, with direction to the court below to relieve the sureties on the replevy bond of all liability upon proof that the extension was made without the assent of the sureties.

[9] Several other questions are presented. It is particularly insisted that article 7107, authorizing the sheriff to judge of the reasonable amount of damage to property, if damaged while in possession under the replevy bond, is void as undertaking to invest that officer with judicial power. This article of the statutes provides that the defendant shall have the right at any time within ten days after the rendition of the judgment against the sureties on the replevy bond to deliver to the sheriff or constable of a court in which the judgment is rendered the property, or any portion thereof, which he bound himself to have forthcoming to abide the decision of the court, "and the sheriff or constable to whom such possession is tendered shall receive such property, if the same has not been injured or damaged since the replevy, and receipt to the defendant therefor, and shall immediately deliver such property to the plaintiff." The next article (7108) provides that, if the property tendered back by the defendant has been injured or damaged while in his possession under such bond, the sheriff or constable to whom the same is tendered shall not receive the same, "unless the defendant at the same time tenders the reasonable amount of such injury or damage, to be judged of by such sheriff or constable." The San Antonio Court of Appeals in the case of Morgan v. Coleman, 204 S. W. 670, supports the contention that, in so far as the articles of the statutes referred to invest the sheriff with power to determine the amount of damage, they are void, citing Dupree v. State, 102 Tex. 455, 119 S. W. 301.

Substantially the same provisions relating to the writ of replevy of personal property has been in force in this state from a very early day, and, in so far as we have been able to find, their validity has never before been questioned, and we do not feel quite prepared to say that the power thus given to the sheriff to ascertain damage that may have been done to sequestered property amounts to more than a power to ascertain and report to the court the facts where, in event of a contest on the subject, the amount of damage may be judicially determined, as is the case in the very familiar instance of a jury of view appointed to view out a public road, and to hear the owners of the land upon their claim of damage, and to report their findings to the commissioners' court. At all events the provision under discussion does not necessarily render the entire articles void; indeed the San Antonio court did not so hold; and, inasmuch as in this particular case the record presents no question tending to show that any of the sequestered property was returned to the sheriff, and a claim made by that officer of the damage done, we will not undertake to finally or formally decide the question.

We conclude, however, that for the reasons stated the judgment must be reversed, and the cause remanded, with direction to the trial court to entirely discharge the plaintiffs in error in event it shall be found that the agreement and judgment to stay execution was entered without the assent of the sureties on the replevy bond.