UNITED STATES FIDELITY & GUARANTY CO. v. CLIFTON et al. (No. 10148.)*

(Court of Civil Appeals of Texas. Fort Worth. Feb. 10, 1923. Rehearing Denied March 10, 1923.)

Replevin ⬤123—Agreed judgment between plaintiff and defendant in replevin held not void as to nonconsenting surety on plaintiff's bond.

An agreed judgment rendered against a principal defendant and his surety on a replevin bond providing for a stay of execution is not void as to the nonconsenting surety, in view of Rev. St. art. 258, and Vernon's Sayles' Ann. Civ. St. 1914, art. 2393.

Conner, C. J., dissenting.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by the United States Fidelity & Guaranty Company against J. D. Clifton and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, and Turner & Seaberry, of Eastland, for appellant.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellees.

BUCK, J.. The United States Fidelity & Guaranty Company filed suit in the district court of Eastland county against J. D. Clifton, E. L. Clifton, and P. A. Clifton, doing business under the firm name of Clifton, Clifton & Co. In substance, the plaintiff alleged that theretofore on September 27, 1920, in a suit styled the Dixie Oil & Refining Company v. J. D. Clifton et al., the plaintiff here, as surety, executed a replevin bond for the plaintiff in the former suit and payable to the defendants in this suit; that subsequently a judgment was entered in the former suit in favor of Clifton, Clifton & Co. against the Dixie Oil & Refining Company for $5,354.70, with a stay of execution for four months after the date of said judgment. Plaintiff in this suit alleged that it was not a party to the other litigation, except as a surety on the plaintiff's replevin bond, and was not represented by counsel, and was not a party to any agreement between the plaintiff and the defendants in said suit for the stay of execution; that said stay of execution was

granted to the defendants in the judgment on their cross-action without consulting the present plaintiff, the surety, and without the surety's knowledge or consent; that the agreement between the plaintiff and the defendants in said former suit contemplated that the plaintiff would withdraw any defense it had against defendants' plea over, and give judgment for the defendants, if the stay of execution was granted. Plaintiff further alleged that it had reason to believe, and did believe, that if an execution and order of sale had been issued upon the former judgment, in the manner and within the time required by law, that the defendants in said suit would have realized and recovered their said judgment out of the Dixie Oil & Refining Company, by virtue of the sale of the property belonging to said plaintiff, but that all of said property belonging to the plaintiff is now in the hands of a receiver, appointed by the court, and that Clifton, Clifton & Co. should be required to follow said property into the hands of the receiver, but that, in any event, by virtue of said agreement and said judgment, extending the time of payment for the satisfaction of said judgment, the plaintiff in this suit has been released from any and all liability as surety on said bond. Hence the plaintiff prayed the court to grant a writ of injunction restraining Clifton, Clifton & Co. from selling and having sold the securities deposited with the state treasurer at Austin by the plaintiff, under the requirements of the law.

Upon the presentation of the petition to the judge of the Eighty-Eighth judicial district court of Eastland county, a temporary writ of injunction was granted as prayed for, but upon a motion to dissolve, made by the defendant in this suit, said writ was vacated and dissolved, and it was the order of the court that Clifton, Clifton & Co. recover from the Dixie Oil & Refining Company the sum of $5,354.70, and the court foreclosed the writ of attachment lien in favor of Clifton, Clifton & Co. on certain described personal property belonging to the Dixie Oil & Refining Company, and which had been replevied by it under a replevin bond, on which the plaintiff in this suit was surety, and gave Clifton, Clifton & Co. a judgment against the plaintiff in this suit on said bond.

From the judgment the plaintiff has appealed to this court.

The question for decision in this case is whether or not an agreed judgment rendered against the principal defendant and his surety on a replevin bond providing for a stay of execution is void as to the nonconsenting surety. In Bank v. Bray, the Supreme Court, speaking through Justice Phillips (105 Tex. 312, 148 S. W. 290), later Chief Justice, said:

"The established rule of law is that if, without the consent of the surety, a binding agreement is made between the creditor and the principal debtor for an extension of the maturity of the debt, the surety is released; and the effect is the same as to property that stands in the relation of a surety, as did the property of Mrs. Bray in this case. The reason of the rule demonstrates its justness as a principle as well as its necessity in the business affairs of the people, for at any time after the maturity of the debt, the surety, for his own protection, should possess the right to pay it and proceed against the principal or indemnity, and such right is impaired if the creditor enter into a valid contract with the principal for an extension of the time of payment. The law therefore visits upon the creditor the deserved consequence of his so impairing the right of the surety by releasing the surety from liability. Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128. The true test in every such case accordingly is whether the agreement of extension is such as to deny to the surety the exercise of this right which inheres in his relationship, and which the law places at his disposal and command as a benefit and protection immediately upon the maturing of the debt. If the agreement of extension be a binding one, its effect clearly is to deprive him of his right. But, if the agreement be not a binding one, it remains intact and unprejudiced. What the law speaks of in this sense as 'a binding agreement' is an agreement that is conclusive upon both the creditor and the principal, an agreement that both effectually stays the hand of the creditor, and yields to the principal the full benefit of the indulgence, an agreement that neither can avoid, but which both must respect, and which because of its inviolable character operates to the harm of the surety."

In Turner v. National Cotton Oil Co., 50 Tex. Civ. App. 468, 109 S. W. 1112, it is said:

"The undertaking of a surety is to be strictly construed, and his liability will not be extended beyond the precise words of his agreement, either by construction or implication."

The right of a surety to consider himself discharged by an extension of time to the principal is not affected by the fact that the principal was insolvent or a discharged bankrupt, at the time of such extension, nor that the extension benefited or did not injure the surety; his contract being changed. Short v. Shannon (Tex. Civ. App.) 211 S. W. 463; Maier v. Thorman (Tex. Civ. App.) 234 S. W. 239.

In Gerlach & Bros. v. Du Bose, 210 S. W. 742, the Court of Civil Appeals at Beaumont held that the sureties on a bond given on appeal from the justice court to the county court are not relieved from liability by the fact that the appealing principal and his adversary agree upon a judgment against the principal with stay of execution, and that such agreement is made without the knowledge or consent of the sureties; the sureties' obligation being presumably assumed with a view to the control by the principal of the litigation on the appeal.

In Corpus Juris, vol. 4, § 3393, p. 1285, it is said:

"An agreement for affirmance of a judgment appealed from, made in good faith, does not excuse nor discharge the sureties on the appeal bond. And so an agreement for affirmance, extending the time of payment and staying execution, does not discharge the sureties, although made without their express consent."

In Drake v. Smythe, 44 Iowa, 410, the court said:

"The sureties became parties to the record, and were liable to any judgment rendered in the cause within the limit of their obligation. Their relation to the action was not such as gave them any control thereof; they could not dictate to defendant the course he should pursue in the case; he had the full right to do whatever the law authorized in a case where no sureties are concerned. Their position in the case was one of obligation for debts, not of rights in conflict with defendant's rights. They were bound for the judgment which should be rendered against defendant in the progress of the suit. That defendant had the right to stipulate * * * upon the rendition on the judgment cannot be questioned. The sureties, then, are bound by that agreement, and are liable upon the judgment."

In Ammons v. Whitehead, 31 Miss. 99, the court said:

"The necessary legal effect of their execution of the bonds was to confer upon the principal full power to do whatever he might deem necessary and proper in defending or determining the suits. * * * And upon the same reason he was authorized to compromise the suits upon terms advantageous to himself. This was no violation of the obligation of the sureties, nor a variation of the terms of their obligation; for that was entirely contingent and uncertain, except that the parties had, by the necessary legal effect of the act, submitted themselves to whatever might be done in the determination of the suit, by their principal, under the sanction of the court. * * * And whether the sureties be regarded as parties to the judgment, and as such bound by the proceedings in the suit, or as bound by the action of their principal by reason of the power necessarily conferred upon him by the purpose and legal effect of the bonds, it is clear that the sureties are not within the rule which discharges such parties in consequence of indulgence given to their principal."

In Montrose v. Baggott, 161 App. Div. 494, 505, 146 N. Y. Supp. 649, 657, the parties agreed to continue the case until the next term of court, at which time plaintiff was to have judgment for the amount of his demand. The sureties on the appeal bond pleaded that this agreement released them. The New York court held that it did not, and in part said:

"The undertaking we are considering was not to pay the claim in suit, but the judgment that might be recovered. The sureties' obligation did not arise until the judgment was recovered. The indebtedness for which they were sureties had not matured. A judgment might never have been recovered. Until its recovery the sureties would be in no position to pursue the principal debtor. They could not control the creditor's litigation. He could conduct it in accord with his best judgment to accomplish his own purposes. The rule of exoneration did not apply because the reason for it did not exist."

See Howell v. Alma Milling Co., 36 Neb. 80, 54 N. W. 126, 38 Am. St. Rep. 699, and other cases cited upon this point in Gerlach & Bros. v. Du Bose, supra.

Article 258, Rev. Statutes, contains the obligation of a surety on a replevin bond "that, should the defendant be condemned in the action, he shall satisfy the judgment which may be rendered therein, or shall pay the estimated value of the property with lawful interest thereon, from the date of the bond."

Article 2393, Vernon's Sayles' Ann. Civ. St. 1914, provides for appeal from the justice court and gives the conditions of the bond "that the appellant shall prosecute his appeal to effect, and shall pay off and satisfy the judgment which may be rendered against him on such appeal."

It will be noticed that the replevin bond and the appeal bond discussed in Gerlach & Bros. v. Du Bose, supra, in common, contain conditions that the liability of the surety is dependent upon a judgment having been obtained against his principal, and that the surety agrees and binds himself in the case of a replevin bond that should the defendant be condemned in action, he will satisfy the judgment which may be rendered, and pay the estimated value of the property replevied; and in the case of an appeal bond, the surety binds himself to satisfy the judgment which may be rendered against his principal. We believe that the two bonds are essentially the same, and that the holding in the Gerlach Case is sound, and is pertinent to the case under consideration.

It is insisted by the appellant that the cases of Pilgrim v. Dykes, 24 Tex. 384, and Burke v. Cruger, 8 Tex. 66, 58 Am. Dec. 102, assert a contrary ruling from that followed in the Gerlach Case. In both of these cases the Supreme Court laid down the rule that a binding agreement between the plaintiff and the defendant to extend the time of payment made before the judgment released the surety.

But no Texas case has been cited, and we have found none, holding that where the stay of execution is granted in the judgment, that the surety is thereby released from liability. In Siddall v. Goggan & Bro., 68 Tex. 708, 5 S. W. 668, the Supreme Court held that where property sequestered has been replevied, the sureties on the replevin bond are bound by a judgment entered on an agreement filed in the cause by their principal, that the debt "is just," and that judgment be entered for the specified value of the property sequestered. Such sureties, not being parties to the suit, cannot, by seeking to make themselves parties defendant, prevent

judgment being rendered on such an agreement, unless they allege that the agreement that the debt "is just" was untrue, or that their principal has some legal or equitable defense to the action, a failure to present which will operate injustice to them.

Appellant urges that the case of Reliable Iron Works v. Bank & Trust Co., 241 S. W. 592, by this court, sustains its contention. Chief Justice Conner, in his dissent, cites and quotes from this decision. If there be a conflict between the last-cited case and the authorities cited in the instant case, in support of the conclusion of the majority, we are inclined to follow what we deem to be the trend of authority in this and other jurisdictions.

It is urged by the appellee that the judgment of the trial court should be affirmed, also, on the ground that the evidence shows that no consideration passed in the original suit from the plaintiff to the defendant to make the agreement for the stay of execution valid, and cites such cases as Brown v. Chambers, 63 Tex. 131, and Yeary v. Smith, 45 Tex. 71, to sustain the contention. But while we recognize the rule laid down by the authorities that an agreement invalid in law to extend the time of payment will not release the sureties, and even though the evidence in this case shows, or tends to show, that the agreement for the stay of execution was not supported by a valid consideration, yet we prefer to rest our judgment of affirmance upon the ground already discussed.

Appellee also urges that in this case the evidence shows that on the day in which the former judgment was entered with the stay of execution, the receiver, theretofore appointed to take charge of the property and affairs of the Dixie Oil & Refining Company, qualified, and that had an execution been issued under the judgment forthwith and an attempt been made to sell the property belonging to the Dixie Oil & Refining Company, such could not be done within the four months for which the stay of execution was granted, because of a receivership, citing such cases as Bothfeld v. Gordon, 190 Mass. 567, 77 N. E. 639, 5 L. R. A. (N. S.) 764, 112 Am. St. Rep. 341, and the Texas case of McAuley v. McKinney, 23 Tex. Civ. App. 500, 57 S. W. 309. We do not express any opinion as to the soundness of this contention.

Appellee also urges that the judgment in this case is not void, inasmuch as the trial court had jurisdiction over the parties and subject-matter, and that if the surety felt itself injured by the judgment, it could have sought its remedy by an appeal or a writ of error, and not by an action in the nature of a bill of review, and in this case, citing such cases as Fisher v. Hemming (Tex. Civ. App.) 164 S. W. 913, Ferguson v. Sanders (Tex. Civ. App.) 176 S. W. 782, Wagley v. Wagley (Tex. Civ. App.) 230 S. W. 493, and Jones v. Wootton (Tex. Com. App.) 228 S.

W. 142, some of which may support that contention.

For the reasons given, all assignments of error are overruled, and the judgment of the trial court is affirmed.

CONNER, C. J. (dissenting). I find myself unwilling to assent to the reasoning and conclusion announced by the Beaumont Court of Civil Appeals in the case of Gerlach & Bros. v. Du Bose, 210 S. W. 742, and in the cases in harmony with it, which have been approved by the majority.

As it seems to me, it is inaccurate and illogical to say that a surety on the defendant's replevin bond thereby constitutes such defendant his agent with power to make agreements with his creditor plaintiff that clearly constitute a departure from the due course of law and result in a material variation in the surety's obligation. While a plaintiff and defendant may make such agreements as are sanctioned by the rules and practices of the courts, they should not be allowed to deprive a surety of a legal right or remedy without his consent. Agreements to continue and confessions of judgment are sanctioned by our rules of practice, but no decision has been cited, and I know of none, where a surety has been denied relief when it was made to appear that such an agreement was without reasonable ground therefor and resulted in depriving the surety of valuable rights. That in such a case it should be held otherwise is indicated in the case of Siddall v. Goggan Bros., 68 Tex. 708, 5 S. W. 668, cited by the majority. The ground upon which it was there held that the agreement that the debt declared upon is "just" did not release the sureties on the replevin bond was that the sureties had not alleged that the agreement that "plaintiff's demand was just" was "untrue" in fact, nor that the defendant was without just defense to the plaintiff's suit, thus implying that had the sureties so alleged and supported such averments by proof their defense would have been entertained. It is to be observed that in the case last cited, as would ordinarily be true of an order granting a continuance, a change of venue, or other like order, by agreement, nothing on the face of the record affirmatively shows that a surety has thereby been deprived of a legal right or remedy. and hence the necessity of pleading and proof to so show. In the case now before us, however, the judgment on its face, when read in the light of laws to be hereinafter noted, shows that the surety has been deprived of valuable remedies. The reason for the rule of pleading having failed, the rule itself has no application.

The surety on a replevin bond is as truly and simply an accomodative obligor as the surety on a promissory note. In principle, the distinction between the two does not seem to be material. One obligates himself

to pay the debt of his principal, as specified in the note; the other to pay the judgment after the debt has been placed in that form. Indeed, the surety on a replevin bond or on an appeal bond is in a less favorable position than the surety on a promissory note to receive the protecting care of the court. He is not, as the other, permitted appearance, voice, or control in the litigation against his principal, but must perforce of our statutes, submit to an entry against him of the judgment at the time judgment is entered against his principal. Why, then, should the court in his protection not require the creditor of his principal to proceed to judgment in accord with the due and usual course of law? It seems to me that a surety of the class under consideration has the right to demand this of a plaintiff creditor as a condition of being allowed a judgment against him. Such a construction of his obligation is not without support in the authorities. To illustrate, the case of Foo Long v. American Surety Co. was one where the judgment on appeal was affirmed by agreement without reference to the merits and without the knowledge or consent of the sureties on the appeal bond. The court held, on the plea of the surety, that the surety was thereby discharged. In the opinion, which was by the Court of Appeals of New York, reported in 146 N. Y. 251, 40 N. E. 730, in disposing of the case, among other things, the following was said:

"The judgment and decision of the appellate court, in due course on the very case, was what the surety became obligated for, if the judgment appealed from should be affirmed. The plaintiff accepted the undertaking with full knowledge of its terms and purpose. The interests of the parties to the judgment were hostile, the plaintiff being interested to maintain his judgment and Chu Fong to reverse it. By giving the undertaking the latter was placed in a position to secure the decision of an appellate tribunal upon the validity of the judgment against him before further proceedings should be taken to enforce it. The defendant's undertaking was executed in view of the situation of the parties to the action at the time. The undertaking was to pay the judgment if it should be affirmed, or the appeal should be dismissed, and this, under the circumstances, referred to an affirmance or dismissal in the ordinary course of judicial procedure, and not an affirmance or dismissal by consent of parties. The plaintiff was entitled to proceed on the appeal according to the usual practice. He could take an affirmance of the judgment by default, if the practice of the court permitted that to be done, or could apply for a dismissal of the appeal upon any ground entitling him to that relief. But to construe the undertaking as permitting the parties to agree upon the judgment to be rendered would subject a surety to a hazard which could not, we think, have been contemplated. * * *

"We hold that the pro forma affirmance of the judgment against Chu Fong, based exclusively on the stipulation of the parties and without any hearing or adjudication by this court on the merits, was not an affirmance, within the meaning of the undertaking."

In Johnston v. Mills, 25 Tex. 704, it appears that Johnston and Dewberry guaranteed the payment of a promissory note executed by one Hayne, and indorsed by one Cox, payable to R. and D. G. Mills; the latter parties agreeing to exercise due diligence to collect the note from Cox and Hayne. Thereafter in September, Mills secured a judgment against Fox and Hayne. The judgment concluded as follows:

"And by agreement of the plaintiff by his attorney, the issuance of execution hereon as to defendant Cox is stayed until the first of February next."

Later yet, Mills sued Johnston and Dewberry upon their guaranty to recover the unpaid balance due on the judgment, and the defendants pleaded that the plaintiff had failed to exercise due diligence to collect the judgment against Cox as had been agreed in the contract of guaranty, and in support of the plea offered in evidence the stipulation above quoted in the judgment against Cox and Hayne. We here note what our Supreme Court said in disposing of the case as at least persuasive in the case we now have under consideration, to wit:

"The question to be considered under the pleadings and evidence is, what effect should this four months' stay of the execution as to Cox have upon the question of reasonable diligence in the collection of this note by R. & D. G. Mills? Had Johnston & Dewberry been sureties only, a valid binding stay of execution upon the judgment for a definite time by Mills might ordinarily have been set up in defense as a release of them. Commonwealth v. Miller's Adm'rs, 8 Serg. & R. 452. This is upon the principle that the contract has been changed. The sureties cannot pay the debt at once and have an immediate remedy against the principal. They would have been placed at disadvantage by the dealings of the plaintiffs, and the law will not permit a calculation to be made of the diminished value of their remaining remedies against the principals, but will hold the sureties released, whether injured or not in fact by the delay. Samuel v. Howarth, 3 Mer. 272; 2 Story, Eq. § 833. While this rule may not apply to this case in all its technical force, still it shows the importance attached to such stipulated delay in collection in a case where there are relations of mutual duties and obligations between parties. Story, Prom. Notes, § 485. * * *

"Without referring to any other fact affecting this question of diligence, it will be sufficient to consider this stay of execution

"Such a stay is not provided for or contemplated as a part of the legal proceedings in the regular process of law in the collection of a debt. Such a proceeding is contemplated in suits in justices' courts, and, when adopted, the indulgence is supposed to be paid for by the increased security which it is provided shall be given. There is no such proceeding provided

for in suits in the district court. If it be entered upon the records as a part of the judgment, as in this case, it is by virtue of the agreement of the parties and not in pursuance of any prescribed rule of proceeding in the suit. It is because the parties have the power to make an agreement concerning the subject-matter of the suit, or the mode of suing the process of the court in reference to it; and the court may permit them to give such agreement conclusive sanction by making it a part of the judgment, if, in doing so, no rule of law be infracted. Staying the execution, therefore, is no part of the regular ordinary proceeding of a suit instituted for the collection of money in the district court. However common it may be in practice, in a legal sense it is extraordinary, and out of the regular course of legal proceeding. That is a matter of legal cognizance. It presents a question of law arising upon the evidence adduced in this case, upon which the court should have instructed the jury. This was especially important in this case; as the common practice of parties in staying executions, of which the jurors were doubtless aware, if unexplained, was well calculated to lead them to the erroneous conclusion that it was a regular step in judicial proceedings. It is a step dependent entirely upon the discretion of the plaintiff in the action, and it places the case out of the regular course of the law. If a party, who is bound to the exercise of reasonable diligence in the ordinary regular course of the law, as were the plaintiffs in this case, should use this discretion and give such stay, he does it at his own risk of losing the amount he might have collected but for the stay. Like any one else who varies from a prescribed and well defined line of duty, in transacting the business intrusted to him, he would be prima facie in default by the act which constituted the variance, and must be prepared to show that such act has resulted in no injury, in order to relieve himself from the consequences of his apparent departure from duty."

I trust that I may be permitted to take a closer view of the obligation of the surety involved in this litigation and of the breach of that obligation as shown in the statement of facts. As set forth in the majority opinion, the obligation was in the form required by article 250, Rev. Statutes, and conditioned that—

"Should the defendant (the Dixie Oil & Refining Company) be condemned in the action, he shall satisfy the judgment which may be rendered therein, or shall pay the estimated value of the property with lawful interest thereon from the date of the bond."

Within the contemplation of that obligation—and beyond this an obligor cannot be held liable—the surety promised to pay any such judgment as the court, by due course of law and procedure, should render against the principal in the obligation. The suit in which the judgment was rendered was one by the Dixie Oil & Refining Company against J. D. Clifton and others, seeking, as is to be inferred from the judgment, to restrain the sale of certain personal property that had been seized under a writ of attachment sued out by Clifton and others, composing the firm of Clifton & Co., and which property had been replevied by the Dixie Oil & Refining Company under the bond of the surety in this case. The judgment actually rendered recites that—

"All parties announced ready for trial, and, a jury being waived, all matters of fact, as well as of law, were submitted to the court; And also at said time in open court came the parties and stated to the court that the parties plaintiff and defendant had agreed that the plaintiff take nothing by its said suit for injunction herein, and that the injunction heretofore issued in this cause should be in all things vacated and dissolved, and that the defendants, Clifton, Clifton & Co., a firm composed of J. D. Clifton, E. L. Clifton, and P. A. Clifton, should have judgment against the plaintiff for the principal, interest, and attorney's fees of the note sued on in said defendant's cross-action herein, together with foreclosure of their alleged attachment lien and judgment on the replevin bond filed herein by the plaintiff, Dixie Oil & Refining Company, and its surety, United States Fidelity & Guaranty Company, a corporation, and the court, after hearing said agreement and the pleadings of the parties and the evidence submitted thereon, is of the opinion that said agreement is just, fair, and legal, and it is therefore in all things approved, and, upon said agreement and the evidence introduced, the court finds that the law and the facts are with the defendants J. D. Clifton, E. L. Clifton, and P. A. Clifton."

It was thereupon further decreed that the Dixie Oil & Refining Company take nothing by its suit against the defendants, and that the defendants, the Cliftons, recover upon their cross-action from the plaintiff and the appellant surety company in the sum of $5,-354.07 with a foreclosure of the attachment lien sued out by the Cliftons upon property specified in the judgment, ordering the sale of said property, the issuance of the execution in favor of the Cliftons, and concluded as follows:

"And it further appearing to the court that the parties herein have agreed that no execution or order of sale shall issue on the judgment within four months from this date, the judgment hereinabove rendered is by agreement of the parties ordered by this court stayed for a period of four months from this date, and during said time no execution or order of sale shall issue herein, but, after the expiration of said time the execution and order of sale herein awarded shall issue according to the terms of this judgment."

Mr. William Pannill, of counsel for the Clifton Bros., omitting statements not thought to be material, thus testified to the negotiations which resulted in the judgment:

"My name is William Pannill. I am an attorney at law. I was one of the attorneys for Clifton Bros. in the case of the Dixie Oil & Refining Company against Clifton Brothers, No. 6986, pending in this court in February,

1921. * * * There were negotiations pertaining to the settlement of that case, and agreement as to judgment. I conducted the negotiations personally. * * * To be as brief as possible, when the case was called that morning, 9th of February, when the plaintiff was called upon for announcement, Judge Butts stated that the affairs of the company had been placed in the hands of a receiver, and claimed that the receiver should be made a party. We had some little wrangling around, and in the course of it Judge Butts (of counsel for the Dixie Oil & Refining Company) suggested to me that the matter might be settled, and we went off and had a conversation, and after several conversations they suggested to us if we would give the receiver reasonable time to sell its property without being forced to sell at forced sale, they would withdraw and permit us to take judgment, and I consulted with Clifton and advised him he would not get execution, and that we would just as well agree to it, and. we came back and agreed that the court might stay judgment for four months, and no consideration passed except just that, just getting this matter out of the way, and that he was entitled to' consideration. They did not pay him anything, and they gave him no further security and got just what that judgment says."   .

The statement of facts further shows that Mr. Pannill on June 16, 1921, more than four months after the rendition of the judgment, wrote to the appellant surety and guaranty company at Dallas, Tex., notifying it of the judgment, therein stating that "a stay of four months was granted on said judgment," and requesting prompt settlement. On cross-examination, Mr. Pannill further said:

"In my statement of that agreement I used the expression 'stay of execution,' but meant by that 'order of sale.' I meant by that 'execution of judgment.' I did not mean to limit it. We made the agreement just as stated then, that the court might enter judgment just as stated in the judgment. So far as I know, this letter addressed by me to the United States Fidelity & Guaranty Company was the first notice I gave them. * * * They had only notice about this time. * * * I am sure that they were never given any absolute actual notice until just the time this four months expired. I know it could not have been prior to that."

It seems to me that it thus conclusively appears not only that there was an agreed extension of time, but also that there was a consideration therefor. The recitations in the judgment show that the Dixie Oil & Refining Company, for which appellant stood surety, abandoned their plea for injunction, acknowledged the validity and existence of the attachment lien on their property, and consented to its foreclosure, and to the rendition of a judgment for a large sum in favor of the appellees herein against not only themselves but also against their surety, the appellant here. It seems evident that for the waiver and agreements on the part of the Dixie Oil & Refining Company the stay of execution in its favor was provided. It seems further evident, particularly when the recitations of the judgment are considered in the light of the testimony of Mr. Pannill on cross-examination, that the judgment was not that of the court pronounced upon evidence and law heard by him in the usual due course of procedure, but was instead upon the agreement of the parties which was, upon evidence relating to the authority of counsel to make it, heard by the court and approved, thus bringing the case within the principle decided in Foo Long v. American Survey Co., supra. It is not pretended that appellant had notice of or consented to any such decree, and hence the agreements and judgment constitute, as it seems to me, a material change in appellant's obligation when legally construed.

Rev. Statutes, art. 3714, in express terms, makes it in all cases the duty of the district or county clerk to issue execution for the enforcement of the judgments rendered in their respective courts "from and after the adjournment" of the term. The next article, 3715, so requires in 20 days after judgment in case "no supersedeas bond on appeal or writ of error has been filed and approved." Yet another article, 3732, provides that if it appears on the face of the execution or by indorsement of the clerk that one against whom it is issued is a surety, then the levy must first be made on the property of the principal, if any can be found in the county where judgment is rendered. In this connection, and before making application of the foregoing articles of the statutes, I wish to briefly refer to several other well-recognized principles of law. One is that the law at the time and place of the making of a contract is as fully a part thereof as if written therein. The most apt expression of this rule that I have found in our own cases is in Smith v. Elliott & Deats, 39 Tex. 201, where our Supreme Court said:

"That the laws which exist at the time and place of the making of a contract entered into and form a part of it, embracing alike those which affect its validity, its construction, its discharge, and its enforcement, forms a rule recognized by numerous authorities of the highest character."

The court, in support of the principles stated in the quotation, cited a number of authorities to which might be added numerous 'others, including Bankers' Mutual & Casualty Co. v. Ry. Co., 192 U. S. 371, 24 Sup. Ct. 325, 48 L. Ed. 484; Rees v. Watertown, 19 Wall. 107, 22 L. Ed. 76; 2 Williston on Contracts, § 615; and 13 Corpus Juris, §§ 523 and 560. The rule is thus expressed in Rees v. Watertown, supra:

"The remedies for the collection of a debt are essential parts of the contract of indebtedness, and those in existence at the time it is incurred must be substantially preserved to the creditor."

Another principle well established in this state is that a surety upon payment of the debt of his principal is entitled by way of subrogation to all securities held by the principal for the payment of the debt, and all remedies of the creditor for its collection. James v. Fulcrod, 5 Tex. 526, 55 Am. Dec. 743; Harrison Machine Works v. Templeton, 82 Tex. 446, 18 S. W. 601. We also have a statute directly applicable. See article 6333, V. S. Tex. Civ. Statutes, which thus reads:

"When any person, being surety in any undertaking whatever, shall be compelled to pay any judgment, or any part thereof, or shall make any payment which is applied upon such judgment by reason of such suretyship, the said judgment shall not be discharged by such payment, but shall remain in force for the use of such surety, and shall be considered as assigned to such surety, together with all the rights of the creditor thereunder, to the extent of the payment thereof made by such surety, and interest thereon; and such surety shall be entitled to have execution thereon in the name of the creditor for the use of such surety against the principal debtor for the full amount of such payment and interest thereon and all costs, which execution shall be issued upon the application of such surety to the clerk, or court, as the case may be, and shall be levied, collected and returned as in other cases."

Applying this statute and the general principles and statutes heretofore mentioned, appellant's obligation was to pay any judgment against its principal that the court by due course of law might render, and not one founded in its essence on agreements of the litigating creditor and his principal, involving material waivers and confessions of liability, to all of which appellant was not a party. Appellant also had the right to assume that in event its principal suffered an adverse judgment of the court, it could, in the short time designated by the statute, sue out an execution in the name of the creditor in the judgment and find property of his principal while he yet possessed it sufficient to relieve it, the surety, in whole or in part, and that the power to procure such execution, or executions, could only be longer delayed by an appeal on a supersedeas bond providing additional security. All such legal anticipatory rights and remedies inherent in appellant's bond and of the benefit thereof appellant was deprived by the stay of execution in the judgment.

Under less favorable circumstances, this court, all concurring, held that a stay of execution by agreement for 60 days in a judgment, if without the consent of the sureties, would release the sureties on the replevin bond in sequestration proceedings, even though there was an absence of evidence showing a consideration for the agreement. See Reliable Iron Works v. First State Bank & Trust Co., 241 S. W. 592. We there said on this subject:

"It is thus evident that by the terms of the decree in this case the plaintiff was deprived of the power of an immediate enforcement of his judgment which, had the same been done with the dispatch contemplated by the law, might have enabled the plaintiff to collect his debt, interest, and costs from the principal defendant without resort to the property of the sureties upon the defendants' replevy bond. It is too well settled to require quotations from the authorities that a binding agreement by the principal and a creditor, giving the former an extension of time for the payment of the performance of his obligation discharges the surety. 2 Williston on Contracts, § 1222; 32 Cyc. p. 204, § 3; 21 R. C. L. p. 1020, par. 73. And this principle has been recognized as applying to a judgment. See Yeary v. Smith, 45 Tex. 56; Bothfeld v. Gordon, 190 Mass. 567, 77 N. E. 639, 5 L. R. A. (N. S.) 764, 112 Am. St. Rep. 341.

"The third headnote to Yeary v. Smith, supra, will convey, we think, the proper conception of the established doctrine, to wit: ·

"'Where a creditor, by valid and binding agreement with the principal debtor, without assent of the surety, materially varies the terms of the contract, or extends the time for its performance, the surety is thereby discharged.'

"The decisions cited were not cases where, as here, the stay of execution was provided for in the judgment in behalf of the creditor, but cases where the agreement to stay the execution arose after the rendition of the judgment. Hence in those cases the necessity of proof of a consideration for the agreement to extend was held to be necessary; a consideration in such cases being necessary in order to make the agreement binding and deprive the creditor of the power to legally enforce collection of his judgment before the expiration of the time limit of his agreement. But here the reason for requiring proof of a consideration fails, in that by the very terms of the decree no execution is authorized until after the expiration of the 60 days. from the adjournment of the term of court, and the creditor therefore is without legal power to enforce his judgment at an earlier date. We think, therefore, that the judgment is binding on the appellee irrespective of an absence of affirmative proof of a consideration for the agreement to extend the time for the issuance of execution, and effectively operates to discharge all of plaintiffs in error upon proof that they did not consent to the decree."

In Wingate v. Wilson, 53 Ind. 78, it was held by the Supreme Court of Indiana that a judgment on appeal, which by agreement decreed ·a stay of execution for six months, released the sureties on the appeal bond.

Our Supreme Court in Pilgrim v. Dykes, 24 Tex. 384, held that an agreement after judgment, made by a creditor upon a consideration to stay execution, released the sureties on a writ of error bond. Of like effect is the decision in the case of Jenkins v. McNeese, 34 Tex. 190.

In the last two cases it is true the stay of execution was after judgment, and the agree-

ments for the stay of execution supported by valuable considerations; but the distinction is not thought to be material here. The same principle runs through all the cases, to wit: That a binding agreement to extend payment for a definite period of time will release the surety. The proof of consideration therefore can be material only in fixing the character of the contract as binding. Hence, as pointed out in the case of Reliable Iron Works, above, where the agreement to extend is made binding by an absolute decree of the court, proof of consideration is unnecessary. However, if necessary, in the case before us a consideration is shown on the face of the judgment, and if the agreement to extend is made binding it can certainly be of no consequence that it was made at the time of the rendition of the judgment instead of before or after. I therefore can but think that the judgment below should not be approved upon the ground which the majority would seem to place it following the case of the Beaumont court.

In reference to the remaining suggestions of the majority, I wish to say that I fail to see upon what principle of justice it can be held that the appellant company should have sought relief by appeal. An agreed judgment is ordinarily to be construed as a waiver of all errors, and, as already shown, it appears affirmatively that the appellant company was without notice of the character of the judgment entered until four months or more after the rendition of the judgment against it. Of what then would an appeal have availed appellant?

Ordinarily, the pendency of a receivership proceeding, if extended beyond the period of the stay of execution, would perhaps be sufficient answer to a defense on the part of the sureties based on the extension, for, in such case, the property of the debtor is lawfully placed in custodia legis and exempt from execution, and upon principles already mentioned the laws so authorizing are also to be read into the surety's obligation and given effect. So that, in such a case regularly determined, the provision in the judgment staying execution may, and perhaps should be, treated as mere surplusage and of no material effect or alteration in the surety's obligation. But the receivership here is of an undetermined length, and in laws regulating receiverships I know of no provisions to the effect that the parties to the suit could by mere agreement and without appellant's knowledge or consent cause or procure a judgment with the recitals, waivers, and confessions shown by the judgment under consideration. It is not the character of judgment appellant agreed to pay. In this connection and in connection with the testimony of Mr. Pannill plainly indicating that no evidence was heard upon the merits of the case by the Dixie Oil & Refining Company and the Cliftons, it is perhaps worthy to also note that the statement of facts affirmatively shows that the appointment of the receiver was by the consent and upon the confession of the Dixie Oil & Refining Company; the record as a whole thus affording an inference that all parties were content to unload upon the nonresident surety.

On the whole, with due deference to the opinion of the majority and cases of like trend, I am inclined to the view that the judgment below should be reversed and here rendered for appellant.

### On Motion for Rehearing.

BUCK, J. Our attention is called to an error in the original opinion of the majority. In Pilgrim v. Dukes, 24 Tex. 384, the extension of time seems to have been given after judgment and not before, as stated. The inaccuracy makes no difference in the conclusion reached by the majority. With a full consciousness of the able dissenting opinion by Chief Justice CONNER, and also the able brief and motion for rehearing filed by appellant, the majority are still of the opinion that their conclusions reached on original hearing are correct.

The motion for rehearing is overruled.

CONNER, C. J., dissenting as before.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and indexes

